STATE OF CONNECTICUT *v.* MICHAEL MOODY
(AC 30031)

Flynn, C. J., and Beach and Pellegrino, Js.*

Argued February 9—officially released May 18, 2010

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Elizabeth M. Inkster*, senior assistant public defender, with whom was *Mirza Refai Arefin*, certified legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert J. O'Brien*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Michael Moody, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On appeal, the defendant claims that (1) the trial court improperly instructed the jury on self-defense, and (2) there was insufficient evidence to disprove his claim that he stabbed the victim, Alonza Staton, in self-defense. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The events in question occurred in New Haven at about 8 p.m. on May 14, 2006, outside an after-hours social club at 232 Shelton Avenue. The victim testified that he had consumed shots of alcohol, drank some beer and likely used heroin that day. During the evening, he picked up his friend, Seileck Jeffrey, and they drove to the social club, where they had a few drinks. Upon exiting the club, the victim encountered his former girlfriend, Robyn McLaurin, who is also the mother of the victim's two children. The defendant, who was McLaurin's boyfriend at the time, was sitting in a vehicle parked in front of the club. The victim stated to McLaurin, "I

hope you ain't starting to beat my car up again."[1] McLaurin responded that she had not damaged his car and subsequently got into the defendant's vehicle.

Thereafter, the defendant exited his vehicle and approached the unarmed victim, causing an argument and eventually a scuffle to ensue. After the scuffle was broken up, the defendant returned to his vehicle. At that point, the victim attempted to remove the license plate from the defendant's car. The defendant retrieved from his car a sharp object and approached the victim.[2] The scuffle between the two resumed, during which the victim's jacket was pulled over his head. The defendant then stabbed the victim in the abdomen with the sharp object. Jeffrey testified that he attempted to break up the fight, that he did not have a weapon that day and that he never saw the victim with a weapon. After leaning the victim against a vehicle in the parking lot, Jeffrey left the scene because the victim's "guts [were] spilling out" and he "didn't want to stick around for that." Immediately after the stabbing, but before police and emergency personnel arrived, the defendant got back into his car and left the scene. Other witness testimony supported this general chronology of events.[3]

After the defendant stabbed the victim, he got into his car and left New Haven. At 1:24 a.m., while driving in East Hartford, he was stopped by police and charged with driving while intoxicated. He was found to have a blood alcohol level of 0.184, well above the legal limit of 0.08. When he was released by East Hartford police,

[1] The victim believed that on previous occasions, McLaurin had flattened his car's tires, broken his car's antenna and scratched his car up with a key.

[2] The victim stated that he saw the object and described it as a butcher knife.

[3] Teethenia Stroud testified that she witnessed the altercation outside the club. She corroborated the victim's version of events, which was that after the initial altercation, the defendant went back to his car and then approached the victim a second time, at which point the stabbing occurred.

he traveled to Worcester, Massachusetts, where he stayed with friends for several days before returning to Connecticut.

The defendant, who testified at trial, maintained that his actions that evening were in self-defense. According to the defendant, the victim and Jeffrey were both attacking him during the altercation, repeatedly kicking and punching him for several minutes. The defendant asserted that the men would not let him escape, and after several minutes of fighting, the victim pulled out a knife. The defendant stated that it was at that point that he pulled out a pocketknife and opened it. According to the defendant, he knew that the victim "had a history of violence," and McLaurin had told the defendant that the victim had stabbed her before. The defendant stated that it was only after the victim attempted to stab him that he stabbed the victim with the pocketknife in self-defense.

After listening to the aforementioned evidence, the jury found the defendant guilty of one count of assault in the first degree. He was sentenced to a term of ten years imprisonment, execution suspended after five years, with five years of probation. The defendant appeals from that conviction. Additional facts and procedural history will be provided as necessary.

I

The defendant claims that the court improperly instructed the jury in that the charge was likely to have misled the jury to believe that it was not the burden of the state to disprove the defendant's claim of self-defense. We disagree.

During its charge, the court delivered the following relevant instructions to the jury: "Now, if the state proves all the elements of assault in the first degree, you must then consider self-defense before you can

return a verdict of guilty. Self-defense is a complete defense to the charge of assault in the first degree. If the state does not disprove beyond a reasonable doubt that the defendant was justified in using deadly physical force, then you must find the defendant not guilty even if you have found that all the elements of assault in the first degree have been proven to you by the state. If the state proves all the elements of assault in the first degree and also disproves beyond a reasonable doubt that the defendant was justified in using deadly physical force, then you must find the defendant guilty of assault in the first degree. . . .

"In claiming that he acted in self-defense, the defendant is claiming that his use of deadly physical force was justified. The parties agree that deadly physical force was used; that's not an issue for you. Self-defense is a means by which the law justifies the use of deadly physical force that would otherwise be criminal or illegal. *Once self-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt. The defendant has no burden of proof at all with respect to the issue of self-defense.*

"On the issue of self-defense, there is a Connecticut statute entitled use of physical force in the defense of person, and insofar as it is applicable here it provides as follows: 'A person is justified in using reasonable physical force upon a person to defend himself from what he reasonably believes to be the imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for that purpose except that deadly physical force may not be used unless the actor reasonably believes that such other person is using or about to use deadly physical force or inflict or about to inflict great bodily harm. . . .'

"A person is justified in the use of deadly physical force upon another when he actually or reasonably

believes that such force is necessary to protect himself from another person who was using or about to use deadly physical force against him or who was inflicting or about to inflict great bodily harm upon him." (Emphasis added.)

After the court provided the jury with the aforementioned instruction, the court went on to discuss, in detail, six circumstances in which a person would not be justified in using deadly physical force. It is the following language that the defendant challenges: "In deciding whether or not the state has proved beyond a reasonable doubt that the defendant was not justified in using deadly physical force, you will first focus on the defendant. You will first focus on what he subjectively and actually believed at the time he used such force. If you find that the state has proven beyond a reasonable doubt that the defendant did not subjectively and actually believe that another person was using or about to use deadly physical force against him or inflicting or about to inflict great bodily harm upon him, the defendant's self-defense claim must fail. . . .

"If, however, you determine that the defendant did subjectively and actually hold such belief, you will then consider under the second circumstance under which the use of deadly physical force is not justified. Under the second circumstance, you will focus on whether the defendant's belief that another person was using or about to use deadly physical force upon him or was inflicting or about to inflict great bodily harm upon him was reasonable under all of the circumstances that existed when the defendant used deadly physical force. . . .

"If you find that the state has proven beyond a reasonable doubt that the defendant's belief that another person was using or about to use deadly physical force against him or inflicting or about to inflict great bodily

harm upon him was not reasonable, then the defendant's claim of self-defense must fail. If, however, you determine that such belief was reasonably held by the defendant, then you must consider the third circumstance under which the use of deadly physical force was not justified. Under the third circumstance, you will focus on whether or not at the time the defendant used deadly physical force he subjectively and actually believed that such level of force was necessary to defend himself. If you find that the state has proven beyond a reasonable doubt that the defendant did not subjectively and actually believe that he needed to use deadly physical force, then the defendant's self-defense claim must fail.

"If, however, you determine that the defendant did subjectively and actually believe that he needed to use deadly physical force, then under the fourth circumstance you must determine whether the defendant's actual belief that he needed to use deadly physical force was objectively reasonable under all the circumstances existing when he used such force. . . .

"If, however, you determine that the defendant's belief in the need to use deadly physical force was reasonable under the circumstances, that is, a reasonable person in the defendant's circumstances would have shared that belief, then you would go on to consider the fifth circumstance under which the use of deadly physical force is not justified."[4]

The defendant claims that the court likely misled the jury and deprived him of his right to a fair trial when it diluted the state's burden of proof by essentially requiring the jury to make affirmative findings as to whether to credit the defendant's self-defense claim. According to the defendant, by using the language "if,

---

[4] The court's charge on self-defense included additional detailed instructions that have not been reproduced in this opinion.

however, you determine," the court's instruction required the jury to determine whether he subjectively and actually believed that he needed to use deadly physical force. We disagree.

The record reveals that the parties were provided copies of the proposed instructions the day before they were given to the jury and an opportunity to object.[5] Following the court's charge, the defendant did not take exception to the court's proposed instruction on self-defense. Acknowledging that the claim of instructional error is unpreserved; see Practice Book § 16-20; the defendant affirmatively has requested review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and has analyzed his claim pursuant to this doctrine in his principal appellate brief. We will review the claim under *Golding* because the record is adequate for review, and the claim that the court improperly diluted the state's burden of persuasion in proving self-defense is of constitutional magnitude. See, e.g., *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995) ("[a]n improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension" [internal quotation marks omitted]).

---

[5] At trial, the following colloquy occurred: "The Court: Now, while I have you both on the record, let me ask you one question. I know we've had some preliminary charging conferences; in fact, I've given you both copies of the boilerplate that the court will use on the charge of assault and also the defense of justification. The Practice Book has a section, gentlemen, and I just want to make sure we're all on the same wavelength, § 42-19. 'After the close of evidence but before arguments to the jury, the judicial authority shall, if requested, inform counsel out of the presence of the jury [of] the substance of [its] proposed instructions. The charg[e] conference shall be on the record or summarized on the record.' Are any of you requesting that we have that conference on the record or summarized on the record?

"[Defense Counsel]: No, Your Honor. As far as I'm concerned, we've had it.
"The Court: All right.
"[The Prosecutor]: Yes, Your Honor."

Recently, in *State* v. *Ebron*, 292 Conn. 656, 682, 975 A.2d 17 (2009), our Supreme Court held that an appellant will not be deemed to have waived a claim of instructional error unless the record shows that he "actively induced the trial court to give the . . . instruction that he . . . challenges on appeal . . . ." Following *Ebron*, a party will have waived an objection to instructional language if he or she has "actively induce[d] the trial court to act on the challenged portion of the instruction." Id., 680. The court discussed active inducement in terms of an appellant having supplied or otherwise advocated for the very instructional language at issue in the appeal. Id., 681–82.

In the present case, the court, one day in advance of its charge, provided copies of its draft charge to the parties and afforded the parties an opportunity to review the draft charge. After reviewing the charge, and after the court delivered its instructions to the jury, the defendant failed to object to any portion of the charge. The court took the necessary practical steps to ensure that the parties had an opportunity to state objections to its instructions while there was still an opportunity at trial to correct any errors or omissions in the charge. See *State* v. *Reynolds*, 118 Conn. App. 278, 305 n.7, 983 A.2d 874 (2009) (discussing purpose of charging conference as it relates to avoiding retrials arising out of instructional errors and precluding appellants from raising claims for first time on appeal). Nonetheless, despite having failed to object to the court's instruction, the defendant's attorney did not actively induce the court to deliver its instruction. Accordingly, following the rationale set forth in *Ebron*, we conclude that the representations of the defendant's attorney and failure to object did not constitute a waiver of the present claim.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury

instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

The defendant cannot prevail under the third prong of *Golding*. The charge very clearly stated, in numerous places, that the state had the burden to disprove self-defense beyond a reasonable doubt and that the defendant had no burden at all with respect to his justification defense. The defendant takes issue with the middle portion of the self-defense charge, in which the court outlined the six circumstances, if proven beyond a reasonable doubt, that a person would not be justified in his use of deadly force. The defendant argues that, specifically, the use of the phrase "if, however, you determine" imposed an obligation on the jury to reach affirmative conclusions of fact that were solely the state's burden to prove.

Although the defendant's argument regarding the court's use of the word "determine" might have merit if viewed in isolation, we cannot conclude, given the entirety of the court's comprehensive and carefully

worded charge, that it is reasonably possible that the instruction misled the jury. The jury was given exhaustive instructions that the defendant had no burden of proof, that the burden rested solely with the state to disprove the defense beyond a reasonable doubt and that, if the state failed to sustain that burden, the jury must find the defendant not guilty. "[A] challenged jury charge is to be read as a whole . . . and judged by its total effect rather than by its individual component parts. . . . The tendency of an irrelevant instruction to mislead the jury instead must be considered in the context of the whole charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 746, 894 A.2d 928 (2006). Accordingly, we conclude that the defendant has failed to demonstrate that a constitutional violation clearly exists that deprived him of a fair trial, and, therefore, the claim must fail under the third prong of *Golding*.

## II

The defendant next claims that the evidence presented at trial was insufficient to allow the jury reasonably to conclude that the state met its burden of disproving self-defense beyond a reasonable doubt. In support of his claim, the defendant argues that the state's case consisted largely of contradictory testimony by witnesses who have histories of assault and crimes of dishonesty and that the state's proof on the defendant's justification defense failed to disprove that defense beyond a reasonable doubt. The defendant's challenge is primarily a challenge to the credibility of the state's witnesses rather than to the sufficiency of the evidence. Therefore, the defendant's claim must fail.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical . . . to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty. . . .

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 283–84, 889 A.2d 821 (2006).

Here, the defendant's claim, though labeled as a challenge to the sufficiency of the evidence, rests on an assessment of the witnesses' credibility. The defendant claims that several witnesses' credibility cannot be sustained because their account of what happened should not be believed. When construed in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the defendant did not act in self-defense.

The defendant essentially argues that the state's principal witnesses were not credible, and, therefore, the jury should have believed his version of the events. The jury reasonably could have relied on the testimony of the victim, Jeffrey or Teethenia Stroud to find that the state had met its burden of proving that the defendant was not justified in stabbing the victim. The jury reasonably could have concluded from the testimony of the state's witnesses that the defendant did, in fact, retreat to the safety of his car before choosing to re-engage the victim with the knife that he had retrieved from his vehicle. Accordingly, the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.