STATE OF CONNECTICUT *v.* BECKER ALTAYEB
(AC 31678)

Gruendel, Beach and McDonald, Js.

---

Argued October 26, 2010—officially released February 8, 2011

*Andrew B. Bowman,* for the appellant (defendant).

*Linda Currie-Zeffiro,* assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Joseph T. Corradino,* senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Becker Altayeb, appeals from the judgment of conviction, rendered after a trial to the court, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and the judgment revoking his probation after the court found that he had violated his probation in violation of General Statutes § 53a-32. On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to sustain his conviction of attempt to commit murder and assault in the first degree, (2) the court improperly determined that he validly waived his right to a jury trial and (3) the court improperly denied his motion for a *Franks* hearing.[1] We affirm the judgments of the trial court.

The following facts, as found by the court, and procedural history are relevant to the disposition of the defendant's appeal. In the early morning of July 28, 2008, the victim, Farid Alzoubi, attended prayer at a mosque located at 1300 Fairfield Avenue in Bridgeport. At the conclusion of prayer, Alzoubi exited the mosque and stood outside on the corner of Fairfield and Clinton Avenues for approximately ten minutes conversing with an acquaintance, Ali Essafi. As the two men were speaking, the defendant approached and joined their conversation. Alzoubi personally was familiar with the defendant, given their mutual connections to the Islamic community center in Bridgeport. Shortly after the defendant appeared, Essafi departed, leaving Alzoubi alone with the defendant. An argument soon ensued, as the defendant threatened to kill Alzoubi for having an affair with his wife. Suddenly, the defendant drew a knife and stabbed Alzoubi in the abdomen, causing him to fall backward onto the street. Bleeding and

---

[1] See *Franks* v. *Delaware*, 438 U.S. 154, 156, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

disoriented, Alzoubi fled across the street to a gasoline station where he called 911, identifying the defendant as his attacker.[2] Richard Campoli, a witness to the stabbing, was sitting on the street curb across from the mosque waiting for a ride to work on the morning of July 28, 2008. After witnessing the stabbing, Campoli observed Alzoubi's attacker flee in a black Mercedes-Benz sedan. Because of the predawn darkness, Campoli was unable to clearly identify Alzoubi's attacker; however, he was able to record what he recalled of the sedan's license plate, which he provided to Bridgeport police. Campoli's account of the incident, particularly his description of the sedan, assisted police in further linking the defendant to the stabbing.

The defendant subsequently was arrested and charged with attempt to commit murder in violation of §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of § 53a-59 (a) (1) and violation of probation in violation of § 53a-32.[3] After a trial to the court, the defendant was convicted of the first two charges and, in a separate proceeding, the court found that he had violated his probation. Thereafter, the court imposed a total effective sentence of eighteen years incarceration, execution suspended after thirteen years, with five years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

First, the defendant claims that the evidence adduced at trial was insufficient to sustain his conviction of attempt to commit murder and assault in the first degree. Specifically, the defendant argues that the court

[2] Alzoubi also identified the defendant as his attacker to the first responding police officer on the morning of July 28, 2008, later to a Bridgeport police detective who interviewed Alzoubi shortly after he was taken to a hospital for his injuries and finally in court on June 29, 2009.

[3] At the time of his arrest, the defendant was on probation for a domestic violence conviction.

improperly concluded that various factual inconsistencies in the victim's account of the stabbing incident and his identification of the defendant as his attacker were the result of language difficulties,[4] rather than outright dishonesty. We disagree.

"The standard of review employed in a claim of insufficient evidence is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the [evidence] so construed . . . the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Chimenti*, 115 Conn. App. 207, 218, 972 A.2d 293, cert. denied, 293 Conn. 909, 978 A.2d 1111 (2009).

"[E]vidence is not insufficient [merely] because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Santos*, 108 Conn. App. 250, 253, 947 A.2d 414 (2008). As a corollary, "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . [In any case], [w]e must defer to the [finder] of fact's assessment of the credibility of

---

[4] The victim testified that he was Jordanian by birth and lived in Jordan for some time before emigrating to the United States, and that English was his second language. It is also noteworthy that the victim can initially be heard speaking Arabic in the June 28, 2008 911 call.

the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Moody*, 121 Conn. App. 207, 219, 994 A.2d 702, cert. denied, 297 Conn. 920, 996 A.2d 1193 (2010). A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See *Molaver* v. *Thomas*, 125 Conn. App. 88, 92–93, 6 A.3d 232 (2010).

Here, the defendant's claim can be summarized as an attack on the court's credibility assessment of the victim and the victim's testimony regarding the stabbing and the identification of the defendant as his assailant. The defendant argues that the court's conclusion that various inconsistencies within the victim's testimony were due to his difficulties with the English language was clearly erroneous. As our case law makes clear, "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review." (Internal quotation marks omitted.) *State* v. *Moody*, supra, 121 Conn. App. 219. Instead, the scope of our review is limited to the question of whether or not the court's conclusions regarding the victim's testimony are supported by the record; we conclude that the record in this case is so supportive. Although the victim may have contradicted himself several times when explaining the circumstances of the stabbing, his "identification of the [defendant as his] assailant . . . was positive throughout" his testimony. Indeed, at no time, from the initial 911 call through the end of trial, did the victim waver in his identification of the defendant as the assailant in this case. Given the victim's nationality, as documented by his trial testimony, the court had evidence

from which it could make the reasonable determination that any inconsistencies in the victim's account of the incident were in fact due to his difficulties in expressing himself in English. Thus, we cannot say, in light of the evidence contained in the record, that the court's factual conclusions regarding the victim's testimony were clearly erroneous, and therefore, there was sufficient evidence to find the defendant guilty beyond a reasonable doubt of the crimes charged. Accordingly, the defendant's claim fails.

## II

The defendant's next claim is that the court improperly concluded that he validly waived his right to a jury trial on the charges of attempted murder and assault in the first degree.[5] Specifically, the defendant maintains that the waiver of his right to a jury trial was not knowingly, intelligently and voluntarily made. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. On June 16, 2009, the defendant appeared with counsel before the court to begin trial. At this time, defense counsel advised the court, *Thim, J.*, of the defendant's desire to waive his right to a jury trial and to proceed instead with a court trial. The following colloquy then ensued:

"The Court: . . . [W]hat I am hearing at this moment is that you want to waive your basic [constitutional] right to have a jury trial—have a trial before a jury and have a decision made by a jury, and instead you want a judge to make the decision as to your guilt or innocence on these charges. Is that correct, sir?

"[The Defendant]: A judge—a judge trial. I have my reasons as well.

---

[5] The defendant does not dispute that he was not entitled to a jury trial on the violation of probation charge.

* * *

"The Court: . . . [Y]ou are charged with attempted murder and assault in the first degree. The potential penalty for each of those offenses is twenty years, and so if you were convicted of both, the penalty could be forty years in prison. . . . Under the law, you have the right to have the decision as to whether or not you are guilty to be made by a jury—a jury of six persons, and that jury would be selected by your attorney and the state's attorney in your presence, and those persons would listen to all the evidence in the case and listen to the judge's charge instructions on the law and decide whether or not the state had proven one or both charges beyond a reasonable doubt. What I am hearing is that you want to give up that procedure, give up that basic constitutional right and have a judge alone decide whether you are guilty . . . . Is that correct, sir?

"[The Defendant]: Yes.

"The Court: And you understand that your lawyer is advising you to the contrary. Your lawyer wants you to proceed with a jury [trial]. Is that correct, sir?

"[The Defendant]: Yes.

"The Court: . . . Is anyone forcing you in any way to give up your right to have a jury trial? . . .

"[The Defendant]: No. Nobody's threatening me. No. . . .

"The Court: . . . Why are you giving up your right to have a jury trial?

"[The Defendant]: I don't trust juries. . . .

"The Court: Do you understand that if I accept your waiver of the right to have a trial before a jury, you will forever have given up the right to have the attempted

murder and the assault charges[s] tried before a jury? Is that clear?

"[The Defendant]: That's fine.

"The Court: The case would proceed to trial today. . . . [The trial] would probably start next week, then you could not come back and say, I want a jury trial. Is that clear?

"[The Defendant]: I understand.

\* \* \*

"The Court: . . . [H]ow old are you, sir?

"[The Defendant]: I am forty.

"The Court: Forty. How far have you gone [in] school, sir? . . .

"[The Defendant]: I—I did four years Air Force College [in Jordan]. . . .

"The Court: Jordan. And what type of work have you done?

"[The Defendant]: I was involved in the [Jordanian] military and the government. That's it. . . .

"The Court: As an officer?

"[The Defendant]: As a captain. . . .

"The Court: Okay. [Counsel], do you have any comments?

"[Defense Counsel]: Your Honor, I am convinced that my client's decision is voluntary. He is not being forced by anyone [to make this decision]. I believe he knows what he faces with the court versus the jury, and he knows the penalty. I do challenge the fact that this is an intelligent decision that he is making; intelligent based upon his reasoning for electing a court trial versus a jury trial. It troubles me. . . . I don't know how else I

can state that I think that this is the wrong decision that he is making, and I think that he is making it for the wrong reason. I don't think the court should accept it.

"The Court: Well, the decision appears to be voluntary. Your client appears to be a very intelligent person. I think your client understands the decision-making process. [Counsel], I don't think that you agree with his decision and have advised that he not waive [it]. . . .

\* \* \*

"The Court: . . . I conclude that the defendant has knowingly, intelligently and voluntarily waived his right to a jury trial and has done so after consulting his attorney."

Following this initial canvassing, the defendant signed a written waiver of his right to a jury trial, affirming his decision to proceed instead with a court trial. Additionally, later in the afternoon of June 16, 2009, the court, *Hauser*, *J.*, again addressed the issue of the defendant's waiver of his right to a jury trial in the following colloquy:

"The Court: . . . I have in front of me [the] defendant's waiver of jury trial dated today, signed by the defendant . . . . [D]id you sign this freely, and voluntarily sign it?

"[The Defendant]: Yes.

"The Court: Do you understand it all?

"[The Defendant]: Yes.

"The Court: There was no part of it you did not understand, sir; is that correct?

"[The Defendant]: I understand.

"The Court: The court finds that the defendant has signed the waiver voluntarily as indicated in the waiver itself and orally to this court himself, not only through his attorney. . . .

"[Defense Counsel]: Your Honor, if I may interrupt. . . . I believe my client is entering this decision knowingly, and voluntarily; however, I don't believe it's an intelligent decision. . . . I believe [it] is a decision I'm against, and I do not believe [it] is intelligent. . . .

"The Court: But it is his right to waive.

"[Defense Counsel]: It is his right to waive it.

"The Court: You heard what [defense counsel] just said, sir?

"[The Defendant]: Yes.

"The Court: Do you still wish to be tried by the court and not by the jury?

"[The Defendant]: Yes.

"The Court: And [do you] still stand behind each and every paragraph of the waiver you signed today?

"[The Defendant]: Yes. Yes."

The defendant now claims that the court improperly determined that the waiver of his right to a jury trial was done knowingly, intelligently and voluntarily.

Before addressing the merits of the defendant's claim, we begin by setting forth the applicable standard of review and legal principles governing our analysis. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v.

*Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right [such as the right to a trial by jury] is not to be presumed from a silent record. . . . [Rather] in determining whether a court has properly accepted a waiver of the right [to a jury trial], there must be some affirmative indication from the accused personally, on the record, that he or she has decided to waive the fundamental right to a jury trial [as] the defendant's silence is too ambiguous to permit the inference that he or she has waived such a fundamental right." (Citation omitted; internal quotation marks omitted.) *State* v. *Tocco,* 120 Conn. App. 768, 777–78, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010).

Here, our review of the "totality of the record [unequivocally] furnishes sufficient assurance" that the

defendant validly waived his right to a jury trial. (Internal quotation marks omitted.) Id., 777. Not only did the defendant explicitly acknowledge, by way of a written waiver, his desire to waive his right to a jury trial, but he also stated numerous times during extensive canvassing by two different Superior Court judges that he wanted to proceed with a court trial in lieu of a jury trial. See *State* v. *Crump*, 201 Conn. 489, 504–505, 518 A.2d 378 (1986) (ruling that written waiver, even in absence of oral acknowledgment by defendant, constituted valid waiver of right to jury trial); cf. *State* v. *Gore*, 288 Conn. 770, 787–88, 955 A.2d 1 (2008) ("when a defendant, personally or through counsel, indicates that he wishes to waive a jury trial in favor of a court trial *in the absence of a signed written waiver by the defendant,* the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily" [emphasis added]). Furthermore, "there is no evidence to suggest that the defendant was not of ordinary intelligence or educational background" such that he could not make a knowing and intelligent waiver of his right to a jury trial. (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 372, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). To the contrary, the defendant received four years of postsecondary education and served as an officer in the Jordanian military. Finally, at all relevant times the defendant had the benefit of counsel, who advised him not to waive his right to a jury trial. See id., 373 ("[a]lthough the presence of counsel does not by itself mean that the defendant's interests and rights are protected . . . [t]he fact of counsel being present and having advised the defendant is a factor to be considered in determining the question of the need for or sufficiency of any admonition given by the court"

[internal quotation marks omitted]). In the present case, the record is more revealing of defense counsel's opposition to the defendant's waiver of his right to a jury trial, rather than that of the defendant himself. As defense counsel conceded, however, it is well established that the decision to waive one's right to a jury trial belongs solely to the defendant, not to his or her attorney. See *State* v. *Gore*, supra, 779 ("[o]ne of the rights that a criminal defendant personally must waive is the fundamental right to a jury trial").

We conclude that the totality of the circumstances in this case clearly demonstrates that the defendant's waiver of his right to a jury trial was done knowingly, intelligently and voluntarily. Accordingly, the defendant's claim fails.

### III

The defendant next claims that the court improperly denied his motion for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 156, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). More precisely, the defendant argues that the court should have held a *Franks* hearing because "there was a substantial preliminary showing that material omissions" from the affidavit in support of the application for his arrest warrant "caused the reviewing judge to be misled" in finding probable cause to arrest him. We are not persuaded.

The following additional facts are relevant to the resolution of the defendant's claim. On June 16, 2009, the defendant moved for a *Franks* hearing to determine whether the judge issuing the arrest warrant had been misled in finding probable cause to arrest the defendant. Judge Hauser held a hearing on the defendant's motion on June 23, 2009, at which time defense counsel articulated the factual basis in support of the defendant's motion. Specifically, defense counsel represented that Campoli, the only eyewitness to the stabbing, was

unable to identify the defendant from a single photograph he was shown by police the day after the stabbing, and that this "exculpatory" information was omitted from the affidavit in support of the defendant's arrest warrant. Additionally, defense counsel noted that Campoli provided a partial license plate description of "L67," and that, despite the fact that the defendant's license plate contained the combination of "L87," this misidentification also was omitted from the arrest warrant affidavit. After hearing testimony from both Campoli and the Bridgeport police detective who submitted the arrest warrant affidavit, the court denied the defendant's request for a *Franks* hearing. In so ruling, the court explained that the defendant had failed to meet his burden in showing the need for a *Franks* hearing because there was no evidence of a "deliberate falsehood or [other] reckless disregard for the truth" on the part of the affiant detective, and "even if the same were present . . . the [alleged omissions] were not necessary for the finding of probable cause . . . ." The defendant now claims that the court improperly denied his motion for a *Franks* hearing, as there was a "substantial preliminary showing that [the] material omissions" from the arrest warrant affidavit "caused the reviewing judge to be misled" in finding probable cause to arrest the defendant.

"In *Franks* v. *Delaware,* supra, [438 U.S.] 155–56, the United States Supreme Court held that where [a] defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, *and* if the allegedly false statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the defendant's request [to determine whether probable cause exists for his or her arrest]. . . . The court in *Franks* mentioned only a false statement . . . included . . . in the warrant affidavit; subsequent

cases, however, have extended *Franks* to include material omissions from such an affidavit. . . .

"Not all omissions, however, even if intentional, will invalidate an affidavit. . . . In fact, an affiant may omit facts that he believes to be either immaterial or unsubstantiated. . . . Thus, before a defendant is entitled to a *Franks* hearing for an alleged omission, he must make a substantial preliminary showing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause. . . . Even if the affiant picks and chooses the information that he includes in the affidavit, there is no *Franks* violation if, had the magistrate been so advised, he still would have been justified in issuing the warrant. . . . When reviewing whether a *Franks* hearing is warranted, we recognize that there is a longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant. . . . In summary, there can be no *Franks* violation when the omissions, if included in the arrest warrant affidavit, would not defeat probable cause." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Grant*, 286 Conn. 499, 519–20, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).

In the present case, the defendant argues that the court improperly denied his motion for a *Franks* hearing in light of the "substantial preliminary showing"; (internal quotation marks omitted) id., 520; that materially exculpatory facts were omitted from the affidavit in support of his arrest warrant. Our review of the transcript from June 23, 2009, however, reveals that at no time did the defendant elicit testimony or offer evidence illustrative of an "intent . . . or [a] reckless disregard" on the part of the affiant detective to mislead the issuing judge by excluding the information in question. (Internal quotation marks omitted.) Id. Rather,

the testimony given by the affiant detective is just as indicative of an intent to "omit facts that he believe[d] to be either immaterial or unsubstantiated," as an intent to mislead the reviewing judge. (Internal quotation marks omitted.) Id. Moreover, even were we to assume, arguendo, that the affiant detective did intentionally mislead the reviewing judge, we would conclude, as did the court, that the omitted information, "if included in the arrest warrant affidavit, would not defeat probable cause" to arrest the defendant. (Internal quotation marks omitted.) Id. Notably, our review of the arrest warrant affidavit discloses that the affiant detective included the fact that the victim recognized the defendant as his attacker, as he had known the defendant for one and one-half years before the stabbing occurred. Additionally, we fail to see how the minor discrepancies between the defendant's license plate and Campoli's recollection of the partial plate number, even if included in the affidavit, would defeat probable cause, given the other corroborating aspects of Campoli's account of the stabbing.

Thus, we conclude that the court did not improperly deny the defendant's motion for a *Franks* hearing because the defendant failed to make the "substantial preliminary showing" necessary to warrant such a hearing. (Internal quotation marks omitted.) Id., 519. Accordingly, the defendant's claim is without merit.

The judgments are affirmed.[6]

In this opinion BEACH, J., concurred.

---

[6] The defendant also claims that, because the court's finding that he violated his probation was premised on his allegedly wrongful conviction of attempted murder and assault in the first degree, the revocation of his probation should be reversed. Because we find no error, however, in the attempted murder and first degree assault conviction, it follows that there is no error as to the finding that he violated his probation. Therefore, we need not address this claim further.

MCDONALD, J., concurring. I concur in the majority opinion that the judgments should be affirmed. As to part I of the opinion,[1] rather than referring to the victim's nationality, I would point to evidence that the victim was stabbed in the abdomen, which caused a large blood clot in the abdominal wall and the mesentery of the colon was injured with arterial bleeding, and evidence that the first police officer interviewing the victim in English, not the victim's first language, had trouble communicating with the victim. Also, the trial court found the victim was bleeding and disoriented as he called 911. Thus, the trial court properly remarked that the victim's contradictions as to the location of the stabbing given to the police and hospital personnel may have been the product of difficulty expressing himself in English while being presented with a greatly emotional situation. I agree, therefore, that there was sufficient evidence to support the judgments.

---

[1] Part III of the final draft before publication was changed to part I of the published opinion.