******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HILBERT ROBERTS
(AC 37163)

Lavine, Keller and Bishop, Js.

*Argued January 6—officially released June 23, 2015*

(Appeal from Superior Court, judicial district of New Haven, Licari, J.)

*Michael Zariphes*, assigned counsel, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. After a jury trial in the New Haven judicial district, the defendant, Hilbert Roberts, was convicted of murder in violation of General Statutes § 53a-54a, felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35. As a consequence, he was sentenced to sixty-five years imprisonment.[1] The defendant appeals from the judgment of conviction, claiming that (1) the trial court incorrectly denied his motion for a judgment of acquittal and motion for a new trial, as the evidence was insufficient to convict him; (2) his due process rights at trial were violated by prosecutorial impropriety during closing argument; and (3) the court incorrectly merged his conviction of felony murder with his murder conviction at sentencing in order to avoid a double jeopardy violation instead of vacating the lesser conviction of felony murder.[2] We affirm in part and reverse in part the judgment of the trial court.

At trial, the jury reasonably could have found the following facts: On April 17, 2005, at approximately 2 p.m., the defendant was driving a black Acura in the vicinity of the intersections of South Genesee and East Ramsdell streets in New Haven.[3] Earlier in the day, the owner of the Acura, Jared Buice, had rented it to the defendant as part of a drug transaction. As the defendant was driving this Acura on South Genesee Street, the victim, Elijah Stovall, was standing in front of his East Ramsdell Street residence, talking with James Duarte, who is the victim's cousin, and Raymond James. The defendant stopped the Acura near the victim, Duarte, and James, got out of the car, and approached the threesome and asked them if "there [was] weed out here." When Duarte replied in the negative, the defendant brandished a .22 caliber handgun and pointed it at Duarte, and grabbed a chain from Duarte's neck. At that juncture, the victim started to back away from the confrontation, and the defendant, while grabbing Duarte's shirt, fired several gunshots at the victim after which he ran back to the Acura and drove away.

Shortly thereafter, the police were called and arrived to find the victim collapsed on the ground. He was later pronounced dead from gunshot wounds. During their investigation, the police interviewed several individuals, including James Porter, who testified at trial. He stated that he had been driving a taxicab near the scene at the time of the shooting and that, after he dropped off a fare, he observed a group of people and then heard gunshots, after which the group dispersed. At this time, he saw a man wearing a fitted cap and a do-rag, carrying what Porter took to be a gun. Porter saw this individual run to a black Acura, get into the driver's side and drive

away from the scene. Porter was able to identify the Acura that Buice had rented to the defendant as the car he saw on the day in question. After a police investigation, which included interviews with witnesses at the scene and forensic evidence, the defendant was arrested on May 7, 2005. Following a jury trial, the defendant was convicted of murder, felony murder, robbery in the first degree, criminal possession of a firearm, and carrying a pistol without a permit and sentenced to sixty-five years imprisonment. This appeal followed.

We first turn to the defendant's claim that the court improperly denied his motion for a judgment of acquittal and motion for a new trial on the basis of his claim that the evidence was insufficient to prove he was the perpetrator of any of the crimes with which he was charged. This claim borders on frivolous and merits a terse response.

We begin by setting forth our standard of review for sufficiency of the evidence claims. "The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Moody*, 121 Conn. App. 207, 217–19, 994 A.2d 702, cert. denied, 297 Conn. 920, 996 A.2d 1193 (2010).

Here, the defendant appears to acknowledge that the testimony of Duarte, if credited, was adequate to prove his guilt, but the defendant argues that Duarte was not credible. Indeed, the record reveals that Duarte identified the defendant as the shooter with fulsome testimony concerning the defendant's behavior before and during the incident, accompanied by the unwavering and repeated identification of the defendant as the perpetrator. Whether Duarte should have been believed was for the jury to decide. And to this task, it responded with a verdict of guilty. We will not retry credibility on appeal.

The defendant next claims that he was deprived of

his due process right to a fair trial by prosecutorial impropriety during closing argument to the jury. During his argument to the jury, the prosecutor stated: "Who's the only person identified as being involved in every stage of this crime? [The defendant]. Who does [Duarte] watch shoot his cousin from just inches away? Right here, still holding onto his shirt. Okay. Looking right at him. Has to push the hand down to get away himself while he's shooting that gun into the side and back of his cousin. Who's the only person who rents a car that is the car—I mean, everybody agrees this black Acura that belongs to Mr. Buice is the car involved. Who rented this car? [The defendant] rented this car. Who drove the car? It makes sense, you rent it, you drive it, right? . . . But who's driving the car? Who's got the keys? Who rented it and kept it over three hours, beyond their three hours? [The defendant]. He's right there. He's the driver of the car. He gets out of the car. James Duarte tells you that. Taneisha Swindell [a passenger in the Acura] tells you that. She's vague about what [Labian McKnight, another passenger in the Acura] did, but she's not vague about whether [the defendant] got out of the car. And who gets back into the car? Who's the only person seen running back into the car by James Duarte? The driver, [the defendant]. He's the only one. The only person connected through here. Now, your job as jurors is never an easy job because it's a serious decision that you've got to make. But these facts that you have before you in two pretty brief days of testimony should make that job easier than it sometimes . . . is. This evidence is overwhelming that [the defendant] committed this crime. And there is nobody in this case to suggest that anybody else did it."

The defendant claims that the prosecutor's statement to the jury contained assertions not supported by the evidence. Specifically, the defendant claims that the prosecutor was arguing facts not in evidence in stating that Duarte saw the defendant shoot the victim, that Duarte pushed the shooter's hand aside, and that Duarte also saw the defendant run back to the driver's seat of the car. The defendant claims, as well, that the prosecutor improperly asserted that the vehicle involved in the incident was the Acura rented by the defendant from Buice, where, the defendant claims, the state adduced no physical evidence that Buice's Acura was involved. In response to this claim, the state asserts that the prosecutor's comments, in the main, find support in the evidence and that one statement regarding Duarte's observation of the defendant running from the scene to the driver's seat of the car was merely an inadvertent misstatement. We agree with the state.

We begin by setting forth the legal principles and standard of review that guide our analysis. "The standard of review governing claims of prosecutorial impropriety is well established. In analyzing claims of prosecutorial impropriety, we engage in a two step ana-

lytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . [If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . .

"Because the claimed prosecutorial improprieties occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Chase*, 154 Conn. App. 337, 341–43, 107 A.3d 460 (2014), cert. denied, 315 Conn. 925, 109 A.3d 922 (2015).

Finally, we note that the defendant failed to object at trial to the remarks that form the basis of his appeal. "[O]ur Supreme Court has explained that a defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) Id., 343–44.

As to the statement made by the prosecutor that Duarte looked at the shooter and pushed his hand aside while gunshots were being fired, the record reveals that Duarte testified that he saw the defendant as he alighted from Buice's Acura. He described the shooter, picked him out of a photographic array, and identified him at trial as the defendant. Again, contrary to the defendant's claim, the record reveals that Duarte observed the defendant close at hand in the moments leading up to the shooting and while it was taking place. These

comments are adequately supported by the record. As to the presence of Buice's Acura at the scene, the state asserts that this claim is supported by the evidence as well. To be sure, the record reveals that the identity of this particular vehicle at the crime scene was not a contested issue at trial. Therefore, the prosecutor's comment relating to Buice's Acura at the scene was reasonably based on inferences made from trial testimony.

Finally, the state acknowledges that the prosecutor incorrectly identified Duarte as the person who saw the defendant run from the scene. The state argues, nevertheless, that this statement was merely an inadvertent misidentification of the witness who testified to seeing a person wearing a fitted cap and do-rag and carrying a gun while running from the scene to Buice's Acura and driving away. The state points to testimony from another witness, Porter, who gave this testimony, not Duarte. Additionally, the state adduced testimony from another witness, Swindell, a passenger in Buice's Acura at the time of the accident, that the defendant was wearing a do-rag and driving Buice's Acura at the time. Therefore, as argued by the state, the prosecutor did not make a claim unfounded in the evidence, but simply misidentified the witness who provided this testimony. Not every mistake by a prosecutor in closing argument, not every misstep, amounts to an impropriety. The substance of the comment, that the defendant was observed running from the scene, gun in hand, then driving away in Buice's Acura, finds complete support in the evidence. Even if we assume, arguendo, that the prosecutor's misstatement was improper, there is no reasonable likelihood that this one misstatement influenced the jury or prejudiced the defendant. See *State* v. *Williams*, 81 Conn. App. 1, 15, 838 A.2d 214 ("[a]lthough the prosecutor misspoke concerning the defendant's testimony, when the isolated comment is read in context, it is clear that the jury reasonably would understand to what the prosecutor was referring"), cert. denied, 268 Conn. 904, 845 A.2d 409 (2004). On the basis of the foregoing, we conclude that the prosecutor's remarks during closing argument did not deprive the defendant of his right to a fair trial.

The defendant's last claim is that the court, faced with a guilty verdict as to both felony murder and murder, should have vacated the lesser charge and should not have merged the conviction on those counts. Indeed, the record reflects that at the time of sentencing, the court merged the felony murder conviction into the conviction of murder and sentenced the defendant on the murder conviction. This panel's response to this claim is governed by a previous decision of this court in *State* v. *Miranda*, 145 Conn. App. 494, 75 A.3d 742, cert. granted, 310 Conn. 942, 79 A.3d 894 (2013); see also *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013). There, a panel of this court determined that the rule of

vacatur applicable to double jeopardy claims should apply to a cumulative conviction of multiple crimes that are based on a single act. *State* v. *Miranda*, supra, 506. In light of this court's holding in *Miranda*, we are constrained to agree with the defendant that the court should have vacated the felony murder conviction and sentenced the defendant on the murder conviction. Because the intention of the sentencing judge here is clear; see footnote 1 of this opinion; a remand to the trial court for resentencing is not necessary. See *State* v. *Miranda*, supra, 508.

The judgment is reversed only as to the conviction of felony murder and the case is remanded with direction to vacate that conviction. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court merged the conviction of murder under count one and felony murder under count two, and sentenced the defendant on this conviction and the remaining counts. Specifically, he was sentenced as follows: in count one, a term of imprisonment of sixty years for the crime of murder; in count three, a term of imprisonment of twenty years for the crime of robbery in the first degree, to be served concurrently to count one; in count four, a term of imprisonment of five years for the crime of criminal possession of a firearm, to be served consecutively to counts one and three; in count five, a term of imprisonment of five years for the crime of carrying a pistol without a permit, to be served concurrently with count four and consecutively to counts one and three. The total effective sentence imposed was, therefore, sixty-five years.

[2] In his brief, the defendant also asserted a claim regarding the court's instructions to the jury on the subject of transferred intent. At oral argument before this court, the defendant withdrew this claim.

[3] With the defendant in the Acura were passengers Labian Knight, William McDuffy, and Taneisha Swindell.