******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* CHARLES J. INGALA
(AC 41135)

DiPentima, C. J., and Moll and Devlin, Js.

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of possession of a
sawed-off shotgun and criminal possession of a firearm, the defendant
appealed to this court. The defendant allegedly fled the scene of a motor
vehicle accident and thereafter assaulted a witness to the accident with
a sawed-off shotgun. The police met the defendant at his home in an
attempt to locate the shotgun. The defendant gave the police permission
to search his apartment and the backyard of the property but the search
was unsuccessful. The police thereafter conducted a ruse; they stated
that they were leaving the property but, instead, continued their surveil-
lance of the defendant to see if he would recover the weapon after the
police left. The defendant then walked outside to an area of the property,
where he was stopped by the police. The police then resumed their
search of that area and seized the shotgun. On appeal to this court, the
defendant claimed that the trial court improperly denied his motion to
suppress the shotgun because there were no exigent circumstances that
permitted the officers to conduct a warrantless search and seizure of
the shotgun under the fourteenth amendment to the federal constitution.
*Held* that the trial court properly concluded that the search was lawful
under the exigent circumstances exception to the warrant requirement
and properly denied the defendant's motion to suppress, as the police
had strong reason to believe that the defendant had used the sawed-
off shotgun to assault the witness earlier that evening and it was likely
that the shotgun was on the property despite the defendant's assertions
to the contrary; the record indicated that the defendant was visibly
intoxicated and had stated in the presence of the officers that he was
willing to resort to violence in response to someone who bullied him,
it was reasonable and prudent for the police to believe that the shotgun
could have been loaded, and, under the circumstances, it was reasonable
for the police to conclude that the defendant believed that the police
had all left his property, that the defendant was intent on recovering
the shotgun, and that such actions were prompted by the defendant's
desire to avoid arrest, and the record sufficiently demonstrated that the
police were concerned that the defendant could soon arm himself and
present a threat of safety to the officers had the defendant discovered
them surveilling the property.

Argued March 10—officially released July 21, 2020

*Procedural History*

Information charging the defendant with the crimes
of interfering with an officer, possession of a sawed-off
shotgun, criminal possession of a firearm, and breach of
the peace in the second degree, brought to the Superior
Court in the judicial district of Waterbury, geographical
area number four, where the court, *Cremins, J.*, denied
the defendant's motion to suppress; thereafter, the state
entered a nolle prosequi as to the charges of interfering
with an officer and breach of the peace in the second
degree; subsequently, the defendant was presented to
the court, *Fasano, J.*, on a conditional plea of nolo
contendere to possession of a sawed-off shotgun and
criminal possession of a firearm; judgment of guilty in
accordance with the plea, from which the defendant
appealed to this court. *Affirmed.*

*Adele V. Patterson*, senior assistant public defender,

for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Joseph S. Danielowski*, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Charles J. Ingala, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere,[1] of possession of a sawed-off shotgun in violation of General Statutes § 53a-211 and criminal possession of a firearm in violation of General Statutes § 53a-217. The plea followed the trial court's denial of the defendant's motion to suppress the sawed-off shotgun seized by the police. The sole issue in this appeal is whether the warrantless search of the defendant's backyard and the warrantless seizure of the shotgun may be justified under the exigent circumstances exception to the warrant requirement of the fourth amendment to the United States constitution.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's claims on appeal.[3] At approximately 11 p.m. on August 28, 2016, police officers with the Watertown Police Department were called to the scene of a motor vehicle accident that had occurred in Waterbury near the border of Watertown.[4] Upon arriving at the scene of the accident, the officers learned that one of the vehicles involved had fled the accident. One of the officers, Jeffrey McKirryher, left in an attempt to locate this vehicle. Shortly thereafter, McKirryher was flagged down by George Petro, a motorcyclist, who had seen the accident. Petro told McKirryher that he had spoken to the driver of the vehicle who had left the scene of the accident and that the driver had pointed a sawed-off shotgun at Petro's head. Petro had a cut on his forehead and later explained that the driver had struck him in the head with the shotgun. Petro then informed McKirryher that the driver had fled to a nearby home and led McKirryher to the defendant's home at 411 Falls Avenue in Watertown. Petro indicated that the driver "was down around [the] back" of the property. McKirryher alerted other police officers over his radio of the situation and informed them of his location. Shortly thereafter, four more officers from the Watertown Police Department arrived at 411 Falls Avenue, namely, Officer Jack Conroy, Officer Mark Raimo, Sergeant Jason Demarest, and Sergeant David Ciarleglio.

The officers later described the defendant's home as follows. Falls Avenue runs north to south, and 411 Falls Avenue is located on the western side of the road. The primary structure at 411 Falls Avenue is a multifamily, three-story home with a few separate units. The defendant resides in the basement apartment of this structure. To the north of the property is a wooded area. A large commercial building, which was vacant at the time of the investigation, abuts the property to the west. On the southern border, there is a chain link fence that is approximately four feet high, which separates the property from a neighboring residential property. The

land slopes down from Falls Avenue toward the western edge of the property such that the basement is visible and accessible from the rear of the property. A driveway runs from Falls Avenue to the rear of the property between the home and the northern edge of the property. Both the southern and northern sides of the property were open to the backyard.

After alerting the other officers over his radio, McKirryher walked down the driveway with his service weapon drawn and loudly announced his presence. As he reached the rear of the building, McKirryher saw the defendant's vehicle with severe front end damage parked at the end of the driveway. McKirryher then saw the defendant walk out of his apartment and instructed the defendant to raise his hands. When the police approached the defendant, he was visibly intoxicated. The defendant was placed in handcuffs and McKirryher questioned him about the shotgun. The defendant denied possessing a shotgun. The defendant then gave his consent to the officers to search his apartment and the backyard.

Over the course of approximately one-half hour, the officers searched the backyard and the defendant's apartment, but were unable to locate the shotgun. While the search was being conducted, the defendant was asked several times for the location of the shotgun, to which he repeatedly claimed that there was no shotgun. At one point, Demarest warned the defendant of the potential that a child could stumble across the shotgun in the woods, which appeared to concern the defendant despite his claim that there was no shotgun. When discussing the altercation with Petro, the defendant described Petro as a "bully" and remarked, "Don't bully me. . . . I'll kill ya." During the search, one of the defendant's upstairs neighbors informed Raimo that he had observed the altercation between the defendant and Petro, saw the defendant holding a shotgun, and believed that he knew where the defendant normally kept the gun inside the basement apartment.

Eventually, the officers decided to return to the front yard and removed the handcuffs from the defendant. As they were walking toward the street, Demarest remarked to the defendant: "We're leaving." This statement was a pretense because, although some officers left, several officers remained. They firmly believed that the shotgun was on the property and they were not going to leave until it was found.

Upon reaching the front yard, two officers—Mckirryher and Conroy—left the scene to resume their nightly patrol duties. Unbeknownst to the defendant, the three officers who remained on the scene—Demarest, Raimo, and Ciarleglio—decided to keep watch over the backyard to see if the defendant would try to locate the shotgun. Demarest waited on the southern side of the front yard where he could see the southwest portion

of the backyard. Meanwhile, Raimo and Ciarleglio remained on the northern side of the front yard where they could see the northwest portion of the backyard. Within a few minutes, Demarest saw the defendant walk out of his apartment directly toward the southwest corner of the yard, using the flashlight on his cell phone to illuminate the ground. Seeing this, Demarest was convinced that the defendant was retrieving the shotgun and moved into the backyard to intervene. Demarest stopped the defendant approximately six feet from a bushy area in the southwest corner of the yard. When Raimo and Ciarleglio reentered the backyard, Ciarleglio searched the bushy area and found the shotgun hidden under some scrap wood. The defendant then was placed under arrest.

The defendant was charged with two offenses: possession of a sawed-off shotgun and criminal possession of a firearm.[5] On May 26, 2017, the defendant filed a motion to suppress the shotgun as evidence, arguing that the search violated his rights under the fourth amendment and article first, § 7, of the constitution of Connecticut, and that none of the exceptions to the warrant requirement of the fourth amendment applied to the seizure of the gun. In response, the state argued, inter alia, that the danger of the defendant arming himself and harming someone with the gun justified the police intervention. The trial court, *Cremins*, *J.*, held a hearing on the motion to suppress and, over the course of two days, heard testimony from all five of the officers involved in the search of the defendant's home. After the parties concluded their arguments on June 8, 2017, the court issued its decision from the bench and denied the motion to suppress. The court found the officers' testimony credible and concluded that the officers reasonably believed that the shotgun was located somewhere on the defendant's property. The court further concluded that the warrantless search of the defendant's backyard was lawful for three reasons: (1) the defendant had abandoned the shotgun and, thus, had no expectation of privacy to it; (2) the second search conducted when the officers returned to the backyard was a continuation of the first search and, therefore, the defendant's consent to the first search extended to the second search; and (3) the probability that the defendant would endanger human lives or destroy evidence constituted an exigent circumstance that excused the warrantless search.

Following the denial of his motion to suppress, the defendant entered a conditional plea of nolo contendere to both charges on the condition that he could appeal the denial of his motion to suppress. The court, *Fasano*, *J.*, accepted the defendant's plea and determined that a ruling on the motion to suppress would be dispositive of the case. Thereafter, the court sentenced the defendant to a term of incarceration of three years for each charge, to be served consecutively, with a mandatory

minimum sentence of two years of incarceration. This appeal followed.

We begin by setting forth our standard of review. "As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . Accordingly, the trial court's legal conclusion regarding the applicability of the exigent circumstances doctrine is subject to plenary review." *State* v. *Kendrick*, 314 Conn. 212, 222, 100 A.3d 821 (2014).

"The fourth amendment to the United States constitution provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[6] (Internal quotation marks omitted.) *State* v. *Liam M.*, 176 Conn. App. 807, 819, 172 A.3d 243, cert. denied, 327 Conn. 978, 174 A.3d 196 (2017).

The trial court analyzed the defendant's motion to suppress under a number of exceptions to the warrant requirement, including the exigent circumstances doctrine, and we agree that this doctrine is implicated by the facts of the present case. "The exigent circumstances doctrine is one of three exceptions to the warrant requirement that are triggered by the need for swift action by the police. All three exceptions, the exigent circumstances doctrine, the protective sweep doctrine and the emergency doctrine, must be supported by a reasonable belief that immediate action was necessary. . . . Of the three, the exigent circumstances doctrine arguably encompasses the widest variety of factual scenarios. [Our Supreme Court] previously [has] recognized the [catchall] quality of the doctrine, explaining that [t]he term, exigent circumstances, does not lend itself to a precise definition but generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they

act swiftly and, without seeking prior judicial authorization. . . . There are three categories of circumstances that are exigent: those that present a risk of danger to human life; the destruction of evidence; or flight of a suspect. . . . The exigent circumstances doctrine, however, is limited to instances in which the police initially have probable cause either to arrest or to search." (Citations omitted; internal quotation marks omitted.) *State* v. *Kendrick*, supra, 314 Conn. 225–27.

Our Supreme Court has adopted a totality of circumstances test to evaluate whether an exigency exists, which inquires "whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest [or entry] were not made, the accused would have been able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test; its preeminent criterion is what a reasonable, [well trained] police officer would believe, not what the . . . officer actually did believe. . . . Put simply, given probable cause to arrest or search, exigent circumstances exist when, under the totality of the circumstances, the officer reasonably believed that immediate action was necessary to protect the safety of those present, or to prevent the flight of the suspect, or the destruction of evidence." (Citation omitted; internal quotation marks omitted.) Id., 227–28. The test requires a reasonable belief, not a level of certainty approaching probable cause. Id., 238–39. That said, "[w]hen there are reasonable alternatives to a warrantless search, the state has not satisfied its burden of proving exigent circumstances." (Internal quotation marks omitted.) *State* v. *Liam M.*, supra, 176 Conn. App. 822. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Kentucky* v. *King*, 563 U.S. 452, 466, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011).

On appeal, the state does not contest that the defendant had a reasonable expectation of privacy, and the defendant does not challenge the trial court's conclusion that the police had probable cause to search the property. Accordingly, we need inquire only into whether the police reasonably believed that immediate action was necessary. The state claims that the defendant's retrieval of the shotgun presented a threat to the safety of the officers on the scene and justified the warrantless search. We agree.[7]

While positioned in the front yard, before the defendant emerged from his apartment, the police had strong reason to believe that the defendant, earlier that evening, had used the sawed-off shotgun—a highly dangerous weapon that is per se illegal—to violently assault

Petro, and that it was likely that the shotgun was on the property notwithstanding the defendant's repeated assertions that he had never possessed a shotgun. See General Statutes § 53a-211. While the defendant never verbally threatened the officers, he repeatedly remarked in the officers' presence that he was willing to resort to violence in response to someone who bullied or wronged him. The police also knew that the defendant was intoxicated. Although the police had no indication as to whether the shotgun was loaded, it was reasonable and prudent of them to believe that it could have been loaded.

It was approximately midnight when the police used the pretense that they were all leaving when, in fact, three remained in the front yard. On appeal, the defendant does not challenge the right of the officers to lie to create this pretense, nor does he challenge the officers' right to remain in the front yard. After only a few minutes, the defendant left his apartment and walked toward the back corner of his yard, using his cell phone flashlight for illumination.

Under these circumstances, it was reasonable for the police to conclude that (1) the defendant believed that the police had all left, (2) he was intent on recovering the shotgun, and (3) such actions were prompted by the defendant's desire to avoid arrest. The officers testified that they were concerned that the defendant would soon arm himself and present a threat to the safety of the officers, and we conclude that such concern was reasonable. At the time that the defendant attempted to retrieve the shotgun from the backyard, Demarest was standing approximately six feet from the southeast corner of the home in the front yard. In the footage from the officers' body cameras submitted to the trial court, the front yard was dimly lit by light coming from the house and from a light post on the edge of the street. Based on this evidence, it certainly would be reasonable for an officer in Demarest's position to conclude that, if the defendant had looked toward the street, he would have seen the silhouette of Demarest standing unobstructed in the front yard and quickly discovered the police surveillance. This posed an imminent threat to the officers' safety if the officers had not intervened and prevented the defendant from arming himself. See *State* v. *Correa*, 185 Conn. App. 308, 338, 197 A.3d 393 (2018) ("the possibility that a suspect knows or may learn that he is under surveillance or at risk of immediate apprehension may constitute exigent circumstances, on the theory that the suspect is more likely to destroy evidence, to attempt escape or to engage in armed resistance" (internal quotation marks omitted)).

On the basis of the totality of the circumstances, the court properly concluded that the search was lawful under the exigent circumstances exception to the war-

rant requirement and properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54a-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] On appeal, the defendant raises numerous arguments in addition to contesting the state's reliance on the exigent circumstances doctrine to justify the warrantless search and seizure. Specifically, the defendant additionally argues that the trial court erroneously determined that (1) the shotgun was abandoned, and (2) the defendant's consent to an earlier search still applied to the later search after the police officers left the backyard and later returned. He also argues that the court implicitly decided that he had a legitimate expectation of privacy in his backyard, thus affording him standing to assert a violation of his fourth amendment rights. In its brief to this court, the state concedes each of these arguments. As a result, the sole issue for this court to decide is whether the exigent circumstances exception applies.

[3] When "the trial court's factual findings in its ruling on [a] defendant's motion to suppress are very limited, in summarizing the relevant facts, we include facts that are implicitly included in the trial court's ruling, and we also look to the record for evidence that supports the trial court's ruling." *State* v. *Kendrick*, 314 Conn. 212, 224, 100 A.3d 821 (2014).

[4] Ultimately, the Waterbury Police Department assumed control over the scene of the accident and conducted a separate investigation to the search for the shotgun at issue in this appeal.

[5] The defendant also was charged with interfering with an officer in violation of General Statutes § 53a-167a and breach of the peace in the second degree in violation of General Statutes § 53a-181. Following the defendant's conditional plea of nolo contendere to the other two charges, the court entered a nolle prosequi as to each of the remaining charges.

[6] Although the defendant claims a due process violation under our state constitution, he does not provide a separate analysis thereunder or argue that the Connecticut constitution provides greater protection than the federal constitution. Accordingly, our review of his claims is limited to the federal constitution. See *State* v. *Johnson*, 288 Conn. 236, 244 n.14, 951 A.2d 1257 (2008).

[7] On appeal, the state also argues that the risk that the defendant could have destroyed evidence or could have removed the shotgun also justified the warrantless search. Because we conclude that the safety concerns of the police justified the search, we need not address these additional claims of exigent circumstances.