******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DWAYNE SAYLES
## (AC 43500)

Elgo, Alexander and Suarez, Js.

*Syllabus*

The defendant, who had been convicted of felony murder and several other crimes, appealed, claiming that the trial court improperly denied his motions to suppress his cell phone that was seized by the police and the information it contained. The defendant and two other men, V and S, had driven to and parked their car near a convenience store. V remained in the car while the defendant and S went into the store, robbed it of cash and cigars, and fatally shot the victim, an employee, before fleeing in the car with V. The police later took a statement from V, who identified the defendant and S as the perpetrators of the robbery and murder, and stated that they had contacted him by cell phone or that he had contacted them by cell phone on the day of the victim's death. The next day, the defendant spoke with two detectives at the police station. After the defendant invoked his right to counsel pursuant to *Miranda* v. *Arizona* (384 U.S. 436), one of the detectives, P, asked the defendant where his cell phone was located. The defendant responded that the phone was with his mother, who was waiting outside of the interview room. P then asked the defendant's mother for the cell phone, which she gave him. The next day, P prepared an affidavit in support of an application for a search and seizure warrant to obtain the contents of the phone. The defendant claimed in his first motion to suppress that the police lacked probable cause to seize his phone at the police station and that the detectives improperly continued questioning him after he invoked his right to counsel pursuant to *Miranda*. He further claimed that the subsequent search of the phone's contents constituted fruit of the poisonous tree as a result of P's having prepared an inaccurate affidavit as part of the warrant application. In his second motion to suppress, the defendant sought to suppress the contents of and cellular data from the phone due to alleged violations of the federal and state constitutions. He claimed that he was entitled to a hearing pursuant to *Franks* v. *Delaware* (438 U.S. 154) because he had made a preliminary showing that P's affidavit contained assertions that were known to be false or were made with reckless disregard for the truth. On appeal, the defendant claimed, inter alia, that this court should adopt a prophylactic rule under the state constitution that would render inadmissible incriminating evidence obtained after a criminal suspect invokes the right to counsel or to have counsel present and the police continue to use deceptive tactics to undermine those rights. *Held*:

1. The trial court properly denied the defendant's motion to suppress the evidence that was obtained from his cell phone, which was based on his assertion that the evidence was discovered as a result of a *Miranda* violation by the police: the defendant did not seek to suppress his response to P, which occurred after the defendant's request for counsel, and, even if a *Miranda* violation occurred when P questioned him as to the phone's location after the invocation of his rights to remain silent and to counsel, the phone and its contents were not subject to suppression under the fruit of the poisonous tree doctrine, as *Miranda* does not apply to the fruits of unwarned statements; furthermore, this court declined to adopt the prophylactic rule the defendant proposed, as the record and the trial court's findings did not support his claim that the police intended to undermine his invocation of his *Miranda* rights and to trick him into telling them where his phone was, and the trial court found, to the contrary, that there was evidence of the phone's use prior to and after the victim's death, and that P wanted to seize the phone to ensure that its data was not erased or damaged; moreover, the defendant's brief lacked a comprehensive analysis of the state constitution that would persuade this court of the propriety of adopting his proposed rule or that the protections afforded by the state constitution are greater than those afforded by the federal constitution.

2. The defendant could not prevail on his claim that the trial court erred in

concluding that the police had probable cause to seize his cell phone pursuant to the exigent circumstances exception to the fourth amendment's warrant requirement: the court correctly found that P, while at the police station, had sufficient information to establish probable cause, which included information that the defendant and S had been involved in the robbery and shooting and that one of them had communicated with V by cell phone, and the court credited P's testimony that criminal actors often use cell phones to communicate with one another and that cell phones may contain evidence that may connect a person to a crime; moreover, there was no merit to the defendant's assertion that the police should not have relied on V's statements to establish probable cause, as it is proper for the police to assess the credibility of informants, and V's statements that were against his penal interest carried their own indicia of credibility.

3. The defendant's claim that the warrant application to search his cell phone contained materially false information pursuant to *Franks* was inadequate for review, as the trial court did not make a finding as to whether the omission in P's affidavit that questioning of the defendant occurred after he requested counsel was done knowingly or falsely or with reckless disregard for the truth, and the defendant's brief failed to address whether that omission was material to the determination of probable cause.

Argued September 17, 2020—officially released February 23, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of felony murder, conspiracy to commit robbery in the first degree, criminal possession of a pistol or revolver and carrying a pistol without a permit, brought to the Superior Court in the judicial district of Waterbury, where the court, *B. Fischer, J.*, denied the defendant's motions to suppress certain evidence; thereafter, the matter was tried to the jury; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Seth R. Garbarsky*, senior assistant state's attorney, and *Lisa M. D'Angelo*, assistant state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. The defendant, Dwayne Sayles, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the trial court improperly denied his motions to suppress certain evidence. Specifically, he contends that (1) police detectives violated his *Miranda* rights[1] and his rights pursuant to article first, § 8, of the Connecticut constitution when they continued to interrogate him after he invoked his right to counsel, (2) the police detectives seized his cell phone in violation of the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution, and (3) the affidavit that the police submitted in support of their application for a warrant to search the contents of his cell phone contained materially false information.[2] We disagree and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. On April 6, 2015, Leighton Vanderberg drove around in his wife's Ford Focus with the defendant and Jamal Sumler.[3] The three men proceeded to the Fair Haven section of New Haven and then toward Forbes Avenue. Sumler requested that they stop at a store. Vanderberg complied, drove to a convenience store and parked on the street. Vanderberg asked Sumler to purchase a couple of cigars and provided him with cash to complete the transaction. The defendant and Sumler went into the convenience store while Vanderberg remained in the vehicle.

Sumler, wearing a grey hooded sweatshirt, entered the convenience store first. As he approached the counter, he pointed a pistol at the victim, Sanjay Patel, an employee at the convenience store. As Sumler moved behind a counter, the defendant entered the convenience store. The defendant pulled out a pistol from his pocket and, after a few moments, shot the victim. The defendant was handed a box of cigars and some cash. He then moved toward the entrance of the convenience store. As Sumler and the victim, who brandished a stool, engaged in a physical altercation, the defendant fled. After the defendant departed, Sumler shot the victim.

At the time of the robbery and shooting, Jonathan Gavilanes was at a friend's house on Forbes Avenue. He heard the sound of gunshots coming from the convenience store. Gavilanes observed two men leaving the store. Gavilanes called 911 and reported the shooting.

The victim was transported to Yale New Haven Hospital, where he died from his injuries.[4] During their investigation, the police recovered evidence from the shooting scene as well as a surveillance video of the incident.

After the shooting, Vanderberg noticed that the defendant was carrying cigars that were falling out of his hands as he returned to the vehicle.[5] As the defendant entered the vehicle, he demanded that Vanderberg drive away. Vanderberg responded that they had to wait for Sumler. After Sumler returned and got into the car, the three men drove away, and the defendant directed Vanderberg to go to the Church Street South housing complex. After parking there, Vanderberg noticed that the defendant had taken an entire box of cigars from the convenience store and watched as the defendant placed that box, and the sweatshirt he had been wearing, into a nearby dumpster. Vanderberg, who had lent the sweatshirt to the defendant, asked why he had thrown it away. The defendant responded, "that shit [is] hot." The three men then walked along a path to the defendant's apartment, where Vanderberg, after speaking with the defendant later, realized that the defendant and Sumler likely had robbed the convenience store. After receiving approximately $20 for gas from the defendant and thirty to forty cigars from Sumler, Vanderberg left the apartment.

The next night, Vanderberg learned from a friend that the victim had been shot and killed at the convenience store. Thereafter, he informed his probation officer about what had transpired at the convenience store. Following his arrest, Vanderberg met with police detectives on April 14, 2015, and identified the defendant and Sumler in photographs that were taken from surveillance video at the convenience store. On April 15, 2015, after the police had procured a warrant and conducted a search of the defendant's residence, the defendant came to the police station, accompanied by his mother, and was interviewed by two detectives. After further investigation, the police arrested the defendant. In May, 2015, while in pretrial custody, he admitted to a fellow inmate that he and Sumler had shot the victim during the robbery of the convenience store.

The state charged the defendant with felony murder, conspiracy to commit robbery in the first degree, criminal possession of a pistol or revolver and carrying a pistol without a permit. The court denied two pretrial motions to suppress that the defendant had filed, and, following a trial, the jury found him guilty of all counts. The court rendered judgment in accordance with the verdict and imposed a total effective sentence of eighty years of incarceration. This appeal followed.[6]

The following additional facts and procedural history are necessary to address the defendant's specific claims. In the defendant's first motion to suppress, filed on January 16, 2018, he sought to suppress the contents

of his cell phone, which, he alleged, had been seized in violation of the United States and Connecticut constitutions. The defendant claimed that, after his unambiguous request for counsel during his interview at the police station on April 15, 2015, Detective Christopher Perrone of the New Haven Police Department asked him where his cell phone was located. The defendant responded that his mother, who was waiting outside the interview room, possessed the phone.[7] Perrone then obtained the phone from the defendant's mother. The next day, Perrone prepared an affidavit as part of an application for a search and seizure warrant to obtain the data contained in the defendant's cell phone. Thereafter, the court issued the warrant for the contents of the defendant's cell phone.[8]

In his first motion to suppress, the defendant argued that the police detectives lacked probable cause to seize his cell phone on April 15, 2015. At that time, they did not have a warrant. He additionally claimed that, during the interview at the police station, the detectives continued questioning him after he had requested the presence of counsel and that the subsequent search of the contents of the cell phone constituted "fruit of the poisonous tree"[9] as a result of inaccuracies in Perrone's affidavit, which was part of the April 16, 2015 application for a search and seizure warrant.

The defendant filed his second motion to suppress on January 18, 2018. He moved to suppress the contents of his cell phone and any cellular data because of violations of both the federal and state constitutions. The defendant again claimed that the contents of the phone constituted fruit of the poisonous tree. He argued that he had made a preliminary showing that the affidavit in support of the April 16, 2015 search warrant contained assertions that were known to be false or were made with reckless disregard for the truth, and, therefore, he was entitled to a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

The court held a hearing on the defendant's motions to suppress on January 24, 2018. Perrone and the defendant's mother testified at the hearing. After argument from counsel, the court orally denied both of the defendant's motions and indicated that a supplemental memorandum of decision would be issued at a later date. The state utilized the data obtained from the defendant's cell phone as part of its case against the defendant, including global positioning system (GPS) information, the defendant's Internet search history, and the communications between the defendant and Sumler and Vanderberg on the night of the murder.

The court issued the supplemental memorandum of decision on April 23, 2018. It set forth the following findings of fact. On April 14, 2015, Vanderberg provided a statement to the New Haven police indicating that he had driven the defendant and Sumler to the convenience

store on April 6, 2015, where they committed a robbery and murder. On that day, the defendant used his cell phone before and after the shooting. In connection with this statement, and after further investigation, the police obtained a search and seizure warrant for the defendant's residence on April 15, 2015.[10] This warrant, however, did not include the defendant's cell phone. The police executed this warrant in the early morning hours of April 15, 2015, seizing a ski mask and gloves. The defendant was not home during the search of his residence but contacted the police later that day. He agreed to go to the New Haven police station to speak with Perrone and another detective, David Zaweski.

The defendant, accompanied by his mother, went to the police station. Before entering an interview room with the two detectives, the defendant handed his cell phone to his mother, who sat on a nearby bench outside of the interview room. The defendant was not placed under arrest and was free to leave the police station at any time. After a few minutes of the interview, which was video-recorded, the defendant requested to speak with an attorney.[11] At this point, the detectives terminated the interview.

Perrone, concerned about the loss of evidence through damage or intentional erasure, intended to seize the defendant's cell phone. Perrone had observed the defendant with a cell phone when he arrived at the police station, but the defendant did not have it with him in the interview room. Thus, after the defendant invoked his right to counsel, Perrone walked over to the defendant's mother and asked if she had the defendant's cell phone. She responded in the affirmative and handed it to Perrone. The defendant's mother also provided the defendant's cell phone number to Perrone.

With respect to the January 16, 2018 motion to suppress, the court concluded that the detectives were justified in seizing the phone under the facts of the case, and the exigent circumstances and inevitable discovery exceptions to the fourth amendment's warrant requirement. As part of its analysis, the court concluded that Perrone had probable cause to seize the defendant's cell phone to prevent the destruction of evidence. With respect to the January 18, 2018 motion to suppress, the court found that Perrone had not made a false statement knowingly and intentionally or with reckless disregard for the truth in his affidavit, which was part of the April 16, 2015 application for a search warrant.

Prior to addressing the defendant's specific claims, we set forth the relevant legal principles regarding the denial of a motion to suppress. "As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]hen a question of fact is essential to the outcome of a particular legal

determination that implicates a defendant's constitutional rights, [however] and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence. . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision." (Internal quotation marks omitted.) *State* v. *Ingala*, 199 Conn. App. 240, 247, 235 A.3d 619, cert. denied, 335 Conn. 954, 238 A.3d 731 (2020); see also *State* v. *Castillo*, 329 Conn. 311, 321–22, 186 A.3d 672 (2018); *State* v. *Marsan*, 192 Conn. App. 49, 65, 216 A.3d 818, cert. denied, 333 Conn. 939, 218 A.3d 1049 (2019).

I

The defendant first claims that the evidence found in his cell phone had been obtained after the detectives violated his *Miranda* rights[12] and his rights pursuant to article first, § 8, of the state constitution, and, therefore, should have been suppressed. He argues that (1) his interview with the detectives on April 15, 2015, was custodial in nature and, therefore, the *Miranda* protections applied, (2) he invoked his rights to remain silent and to have an attorney present, (3) despite his invocation of his *Miranda* rights, the detectives continued questioning him regarding the location of his cell phone, and (4) the continued questioning, conducted with the aim of obtaining incriminating evidence, constituted a violation of his rights to remain silent and to have counsel present. The defendant also contends that the interrogation after his invocation of his rights to remain silent and to have counsel present violated article first, § 8, of the Connecticut constitution[13] and our Supreme Court's recent decision in *State* v. *Purcell*, 331 Conn. 318, 203 A.3d 542 (2019), which broadened the scope of the *Miranda* protections.[14] Furthermore, the defendant requests that we establish a new prophylactic rule, under the Connecticut constitution, that would render any incriminating evidence inadmissible if it is obtained after a suspect invokes his right to remain silent or to have counsel present, and the police continue to utilize deceptive questioning and tactics to undermine those rights.

The state counters that, even if a *Miranda* violation occurred, the fruit of the poisonous tree doctrine does not apply to physical evidence under these circumstances. We agree with the state.

As a general matter, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against [self-incrimina-

tion]." (Internal quotation marks omitted.) *State* v. *Donald*, 325 Conn. 346, 355, 157 A.3d 1134 (2017); see also *State* v. *Turner*, 267 Conn. 414, 420, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). The United States Supreme Court, however, has held that a violation of *Miranda* does not require suppression of physical evidence resulting from that violation. *United States* v. *Patane*, 542 U.S. 630, 634, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004).

The respondent in *Patane* was arrested for violating a restraining order. Id., 635. The law enforcement officers who arrested the respondent, a convicted felon, knew that he illegally possessed a firearm. Id., 634–35. The officers attempted to advise the respondent of his *Miranda* rights, but he interrupted them, asserting that he knew his rights. Id., 635. The officers never completed providing the *Miranda* warnings to the respondent. Id. One of the officers inquired where the firearm was located, and the respondent eventually admitted that it was in his bedroom in his home. The officer, with the respondent's permission, then seized the firearm. Id.

A grand jury indicted the respondent for possession of a firearm by a convicted felon. Id. The United States District Court granted the respondent's motion to suppress the firearm on the ground that the officers lacked probable cause to arrest him for violating the restraining order. Id. The United States Court of Appeals for the Tenth Circuit reversed the ruling of the District Court but affirmed the suppression of the firearm on the basis of the respondent's alternative argument that the firearm was the fruit of a statement made without a proper advisement of his *Miranda* rights. Id., 635–36.

The United States Supreme Court noted that the core protection of the self-incrimination clause in the fifth amendment "is a prohibition on compelling a criminal defendant to testify against himself at trial. . . . *The [c]lause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements.*" (Citations omitted; emphasis added.) Id., 637. The court further declined to apply the fruit of the poisonous tree doctrine under these circumstances. Id., 642–43; id., 643 ("[i]ntroduction of the nontestimonial fruit of a voluntary statement, such as [the] respondent's [firearm], does not implicate the [s]elf-[i]ncrimination [c]lause"). See also *United States* v. *Parker*, 549 F.3d 5, 10 (1st Cir. 2008) (physical fruits of otherwise voluntary statement are admissible against defendant even if *Miranda* warnings wrongly were omitted), cert. denied, 556 U.S. 1160, 129 S. Ct. 1688, 173 L. Ed. 2d 1050 (2009); *United States* v. *Capers*, 627 F.3d 470, 493–94 (2d Cir. 2010) (Trager, J., dissenting) (citing holding of *Patane* that physical evidence obtained as result of unwarned statements is not excluded under *Miranda*).

The appellate courts of Connecticut have followed

the rule established in *Patane*. In *State* v. *Mangual*, 311 Conn. 182, 186, 85 A.3d 627 (2014), the police obtained a search and seizure warrant for an apartment as part of an investigation of the sale of heroin. After obtaining entry to the apartment, the police detained the defendant and her daughters in the living room. Id. Without providing any *Miranda* warnings, an officer asked the defendant if there were any drugs or weapons in the apartment. Id., 187. The defendant responded that there were " 'drugs in the bedroom.' " An officer followed the defendant into the bedroom, where she pointed to a can of hairspray on a dresser and indicated that it contained drugs. Id. The officer removed the false bottom of the hairspray can and discovered 235 packets of heroin. Id. He then placed the defendant under arrest. Id.

The defendant filed a motion to suppress her statement on the ground that she had been in custody and questioned before being provided with the *Miranda* warnings. Id., 188. The trial court concluded that the defendant had not been in custody and denied her motion to suppress. Id., 188–89. The defendant filed an appeal, challenging the court's ruling. Id., 190–91.

Our Supreme Court noted that the defendant had asserted, in passing, that the police likely would not have discovered the hidden heroin but for her statements. Id., 188 n.5. In response, the court stated: "The defendant, however, has raised no claim that the heroin itself should be suppressed as a fruit of the *Miranda* violation. *Indeed, a statement that is obtained in violation of Miranda does not require suppression of the physical fruits of the suspect's unwarned but otherwise voluntary statements.*" (Emphasis added.) Id.

In *State* v. *Bardales*, 164 Conn. App. 582, 585, 137 A.3d 900 (2016), the police obtained a warrant to search the defendant's residence and person after a confidential informant indicated that the defendant stored illegal firearms for sale. In executing the warrant, the police stopped the defendant in his motor vehicle. Id., 586. After the defendant exited his vehicle, a police sergeant asked the defendant if there was anything in the car that "he needed to be concerned about." Id. The defendant admitted that there was cocaine in the pocket of the driver's side door. Id., 589. As a result, the defendant was arrested and charged with possession of narcotics. Id. At trial, the defendant moved to suppress his statement regarding the presence of cocaine in his vehicle. Id., 587–88. The trial court denied the defendant's motion to suppress on the basis of the public safety exception to the requirement of a prior *Miranda* warning before a suspect's answers may be admitted into evidence.[15] Id., 588 and n.1.

On appeal, the defendant claimed that the court improperly denied his motion to suppress as a result of its misapplication of the public safety exception. Id., 587–88. In rejecting this claim, we noted that, even if

we were to assume that the sergeant's question did not fall within the public safety exception, the defendant would not necessarily be entitled to suppression of the cocaine, the physical evidence discovered as a result of the alleged *Miranda* violation. Id., 599 n.6. In support, we cited to *United States* v. *Patane*, supra, 542 U.S. 633–34, and *State* v. *Mangual*, supra, 311 Conn. 188 n.5. *State* v. *Bardales*, supra, 164 Conn. App. 599 n.6.

In the present appeal, the defendant contends that the court erred in failing to suppress the evidence obtained from his cell phone, which he argues was discovered as a result of the alleged *Miranda* violation when Perrone asked the defendant where his cell phone was after the defendant had asked for a lawyer. The defendant does not seek the suppression of his response to Perrone after he requested counsel. On the basis of the precedent previously discussed, even if a *Miranda* violation occurred when Perrone questioned the defendant as to the location of his cell phone after he had invoked his rights to remain silent and to counsel, the cell phone and its contents were not subject to suppression under the fruit of the poisonous tree doctrine. See *State* v. *Mangual*, supra, 311 Conn. 188 n.5; *State* v. *Bardales*, supra, 164 Conn. App. 599 n.6. The remedy for such a violation would be limited to suppression of the defendant's response to the post-*Miranda* questioning, and not the actual cell phone and its contents. See, e.g., *United States* v. *Oloyede*, 933 F.3d 302, 308–10 (4th Cir. 2019) (even if *Miranda* violation had occurred when defendant provided passcode for her iPhone, contents obtained from that device were not subject to suppression), cert. denied sub nom. *Popoola* v. *United States*,     U.S.    , 140 S. Ct. 2554, 206 L. Ed. 2d 488 (2020), and cert. denied sub nom. *Ogundele* v. *United States*,     U.S.    , 140 S. Ct. 1213, 206 L. Ed. 2d 213 (2020), and cert. denied sub nom. *Popoola* v. *United States*,     U.S.    , 140 S. Ct. 1212, 206 L. Ed. 2d 213 (2020); *United States* v. *Heusner*, United States District Court, Docket No. 3:18-cr-02658-BTM (S.D. Cal. October 24, 2019) (*Miranda* violation alone does not require suppression of fruits of unwarned statements, including contents of cell phone).[16] We conclude, therefore, that the court properly denied the defendant's motion to suppress under the United States constitution.[17]

In his appellate brief, the defendant, for the first time, argues that this court should adopt a new prophylactic rule, as a matter of due process pursuant to our state constitution, to protect against police tactics aimed at undermining the constitutional rights of a suspect. Specifically, he proposes the following: "In a custodial interrogation, if incriminating evidence is obtained from a suspect after he has invoked his right to counsel and it can be shown that the evidence was obtained through impermissible questioning designed to undermine the suspect's *Miranda* rights, the evidence can only be admissible if it is shown that 'curative measures' were

taken to ensure that a reasonable person in the suspect's situation would understand the effect of his answering questions after he has invoked his right to counsel and that his doing so was voluntary."

We decline to adopt the rule proposed by the defendant for a variety of reasons. First, in support of his proposal, the defendant asserts that the conduct of the police in the present case revealed "an intent to undermine [his] invocation of rights and to trick him into telling them where they could find his [cell] phone . . . ." The record and the findings of the trial court do not support this assertion. The court made no such findings of fact regarding police deception, trickery, or the intent to deprive the defendant of his constitutional rights. To the contrary, the court found that Perrone had intended to seize the defendant's cell phone because there was evidence that it had been used prior to and after the death of the victim, and because he wanted to ensure that the data contained therein was not erased or damaged.

Second, the defendant's brief has not persuaded us that such a rule is required by our state constitution. In certain instances, our state constitution affords the citizens of Connecticut protections beyond those provided by the federal constitution. *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990); *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 57, 469 A.2d 1201 (1984); see also *State* v. *Joyce*, 229 Conn. 15–16, 639 A.2d 1007 (1993) ("[i]t is well established that federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection of such rights"); cf. *State* v. *Dukes*, 209 Conn. 98, 114, 547 A.2d 10 (1988) (law of land may not also be law of this state in context of our state constitution).

"In construing the Connecticut constitution to determine whether it provides our citizens with greater protections than [does] the federal constitution, we employ a multifactor approach that we first adopted in [*State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992)]. The factors that we consider are (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies]." (Internal quotation marks omitted.) *State* v. *Sawyer*, 335 Conn. 29, 50, 225 A.3d 668 (2020); *State* v. *Taupier*, 330 Conn. 149, 175, 193 A.3d 1 (2018), cert. denied,     U.S.    , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019).

In his appellate brief, the defendant mentions the *Geisler* test, summarily recites the first *Geisler* factor,

and briefly addresses the issue of police deception and trickery. Absent from the defendant's brief is a comprehensive *Geisler* analysis that would persuade this court that the protections afforded by our state constitution are greater than those afforded by the federal constitution or of the propriety of adopting his proposed rule under our state constitution. Cf. *State* v. *Estrella*, 277 Conn. 458, 488, 893 A.2d 348 (2006) (defendant raised due process claim under state constitution, complete with requisite *Geisler* analysis). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 155–56, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016); *State* v. *Diaz*, 94 Conn. App. 582, 593, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006). For these reasons, we decline the defendant's invitation to adopt a new prophylactic rule pursuant to our state constitution.

## II

The defendant next claims that the police seized his cell phone in violation of the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution,[18] and, therefore, the court should have suppressed the evidence obtained from the phone as fruit of the poisonous tree. Specifically, he argues that the court erred in concluding that the police had probable cause to seize his cell phone at the police station pursuant to the exigent circumstances doctrine. The state counters that the court properly determined that probable cause existed at the time of the seizure. We agree with the state.[19]

In his January 16, 2018 motion to suppress, the defendant argued that the police had seized his cell phone on April 15, 2015, without probable cause. He claimed that there was no "nexus" linking the cell phone to any criminal behavior. He further argued that, even if probable cause had existed to seize the cell phone, the exigent circumstances doctrine did not justify its immediate seizure at the police station.

In denying the January 16, 2018 motion to suppress, the court concluded that "the police were justified in seizing [the defendant's cell] phone under the facts of this case and the law of exigent circumstances and inevitable discovery." The court first explained that the police detectives had probable cause to seize the phone. The court relied on Perrone's testimony that, on the basis of his training and experience, coconspirators often use cell phones, before and after the criminal activity, to communicate by talking, texting or using social media. Perrone indicated that he had received information that either the defendant or a coconspirator had communicated with a third coconspirator via cell phones at about the time of the crime. Perrone also

stated that cell phones frequently contained "GPS coordinates on where the phone was at the time of the crime." On the basis of this evidence, the court found that probable cause had existed to seize the defendant's phone at the police station on April 15, 2015.

The court then turned to the exigent circumstances doctrine. It noted that this doctrine constitutes a well recognized exception to the warrant requirement of the fourth amendment. It concluded that Perrone had seized the defendant's cell phone to prevent him from leaving the police station with it, after which the phone could have been destroyed or discarded or the evidence contained therein could have been erased.

On appeal, the defendant contends that the exigent circumstances doctrine applies only if there is probable cause to believe that the seized evidence contains evidence of a crime. He further asserts that the court erred in crediting Perrone's testimony regarding the probable cause to seize[20] the defendant's cell phone at the police station on April 15, 2015. As a result of this alleged constitutional violation, he maintains that his cell phone, and the contents therein, should have been excluded from evidence.[21] We are not persuaded.

We now turn to the legal principles relevant to our analysis of the defendant's claim. "The fourth amendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures . . . . U.S. Const., amend. IV; see also Conn. Const., art. I, § 7. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. . . . Under both the federal and state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Internal quotation marks omitted.) *State* v. *Ortiz*, 182 Conn. App. 580, 587, 190 A.3d 974, cert. denied, 330 Conn. 920, 194 A.3d 290 (2018); see also *State* v. *Owen*, 126 Conn. App. 358, 364, 10 A.3d 1100, cert. denied, 300 Conn. 921, 14 A.3d 1008 (2011).[22]

Our Supreme Court has explained: "The fourth amendment's requirement that a warrant issue from a neutral and detached judicial officer rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. . . . [As we have already observed, however], the fourth amendment proscribes only unreasonable searches and seizures, and *there will be occasions when, given probable cause to search, resort to the judicial process will not be required of law enforcement officers*. Thus, where exigent circumstances exist that make the procurement of a search warrant unrea-

sonable in light of the dangers involved . . . [or the likelihood of evidence being destroyed or removed from the grasp of law enforcement officers] . . . a warrant will not be required." (Emphasis added; internal quotation marks omitted.) *State* v. *Spencer*, 268 Conn. 575, 585–86, 848 A.2d 1183, cert. denied, 543 U.S. 957, 125 S. Ct. 409, 160 L. Ed. 2d 320 (2004); see *State* v. *Jackson*, 304 Conn. 383, 394–95, 40 A.3d 290 (2012); *State* v. *Curet*, 200 Conn. App. 13, 25,    A.3d   , cert. granted on other grounds, 335 Conn. 969, 240 A.3d 287 (2020); see generally *State* v. *Mann*, 271 Conn. 300, 319–20, 857 A.2d 329 (2004) (it is long-standing rule that police must, whenever practicable, obtain in advance judicial approval of searches and seizures via warrant procedure), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005).

"*The exigent circumstances doctrine is one of three exceptions to the warrant requirement that are triggered by the need for swift action by the police.* All three exceptions, the exigent circumstances doctrine, the protective sweep doctrine and the emergency doctrine, must be supported by a reasonable belief that immediate action was necessary. . . . Of the three, the exigent circumstances doctrine arguably encompasses the widest variety of factual scenarios. [Our Supreme Court] previously [has] recognized the [catchall] quality of the doctrine, explaining that [*t*]*he term, exigent circumstances, does not lend itself to a precise definition but generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization. . . . There are three categories of circumstances that are exigent: those that present a risk of danger to human life; the destruction of evidence; or flight of a suspect. . . . The exigent circumstances doctrine, however, is limited to instances in which the police initially have probable cause either to arrest or to search. . . .*

"Our Supreme Court has adopted a totality of circumstances test to evaluate whether an exigency exists, which inquires whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest [or entry] were not made, the accused would have been able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test; its preeminent criterion is what a reasonable, [well trained] police officer would believe, not what the . . . officer actually did believe. . . . Put simply, given probable cause to arrest or search, exigent circumstances exist when, under the totality of the circumstances, the officer reasonably believed that immediate action was necessary to protect the safety of those present, or to prevent the flight of the suspect, or the

destruction of evidence. . . . The test requires a reasonable belief, not a level of certainty approaching probable cause. . . . That said, [w]hen there are reasonable alternatives to a warrantless search, the state has not satisfied its burden of proving exigent circumstances. . . . Moreover, [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Ingala*, supra, 199 Conn. App. 248–49; see also *State* v. *Kendrick*, 314 Conn. 212, 225–28, 100 A.3d 821 (2014). Thus, the existence of probable cause serves as a necessary prerequisite to the applicability of the exigent circumstances doctrine. See *State* v. *Spencer*, supra, 268 Conn. 585–86; *State* v. *Ingala*, supra, 248; *State* v. *Owen*, supra, 126 Conn. App. 366. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Reasonable minds may disagree as to whether a particular affidavit establishes probable cause. . . .

"We consistently have held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . The probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . Probable cause is not readily, or even usefully, reduced to a neat set of legal rules." (Citations omitted; internal quotation marks omitted.) *State* v. *Correa*, 185 Conn. App. 308, 334–35, 197 A.3d 393 (2018), cert. granted on other grounds, 330 Conn. 959, 199 A.3d 19 (2019); see also *State* v. *Eady*, 249 Conn. 431, 440, 733 A.2d 112 (mere suspicion and probable cause often separated by fine line), cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

In determining whether probable cause existed, the "United States Supreme Court has endorsed an objective standard, noting that evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend on the subjective state of mind of the officer." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 182 Conn. App. 592; accord *State* v. *Eady*, supra, 249 Conn. 441; see generally *Ornelas* v. *United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *Beck*

v. *Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). Additionally, the determination of probable cause requires a consideration of the totality of the circumstances. *State* v. *Duffus*, 125 Conn. App. 17, 25– 26, 6 A.3d 167 (2010), cert. denied, 300 Conn. 903, 12 A.3d 572 (2011); see also *State* v. *Sawyer*, supra, 335 Conn. 45–46; *State* v. *Trine*, 236 Conn. 216, 236–37, 673 A.2d 1098 (1996).

On appeal, the defendant claims that the court relied on evidence that was not available to the police at the time they seized his cell phone at the police station. See, e.g., *State* v. *DeMarco*, 311 Conn. 510, 536, 88 A.3d 491 (2014) (reasonableness of police officer's determination that emergency exists so as to justify application of emergency exception to warrant requirement is evaluated on facts known at time of entry into defendant's home); *State* v. *Federici*, 179 Conn. 46, 58, 425 A.2d 916 (1979) (probable cause for seizure under plain view doctrine cannot be established by knowledge obtained after intrusion occurs). He also contends that the police should not have relied on Vanderberg's statements as a basis for determining whether probable cause existed. We are not persuaded by these arguments.

At the January 24, 2018 hearing on the defendant's motion to suppress, Perrone testified that he had taken a statement from Vanderberg approximately one week after the shooting. Perrone learned that Vanderberg drove the defendant and Sumler on April 6, 2015. Vanderberg stated that either they had contacted him or he had contacted one of them by the use of a cell phone. Vanderberg further indicated the he had contact with either the defendant or Sumler via cellular voice call or a FaceTime video call. During the interview, Vanderberg provided Perrone with cell phone numbers for both the defendant and Sumler.

Perrone then testified regarding the interview that he had conducted with the defendant on April 15, 2015. He recalled observing the defendant holding a cell phone while talking with his mother prior to going into the interview room. After a brief time, the defendant asked for an attorney, and Perrone concluded what the prosecutor termed the "substantive portion of the interview . . . ." Perrone explained that, at some point, he had intended to seize the cell phone that he had observed the defendant holding. Perrone also testified, on the basis of his training and experience, that a person suspected of committing a homicide would have an incentive to conceal or to destroy a cell phone or erase the data contained therein. Thus, Perrone thought that, if he had attempted to obtain a warrant, this evidence could have been destroyed or lost. The next day, Perrone obtained a warrant to search the contents of the defendant's cell phone.[23] During his cross-examination at the January 24, 2018 suppression hearing, Perrone acknowledged that Vanderberg never specifically stated

that the defendant's cell phone had been used, but, rather, that Vanderberg had called either the defendant or Sumler.[24]

In its memorandum of decision on the motions to suppress, the court found that Vanderberg had given a statement to the police on April 14, 2015, and that he identified the defendant and Sumler as the perpetrators of the April 6, 2015 robbery and murder. The court also credited Perrone's testimony that cell phones often are used by criminal coconspirators before or after criminal activity and that these devices therefore may contain evidence of such conduct and may include GPS information, text messages, voice communications and social media postings. The court stated: "Perrone further testified that he had information that the defendant had a Facebook account, that the defendant used that Facebook account to communicate with one of the [perpetrators], and that either the defendant or another [perpetrator] communicated with the third [perpetrator] via their cell phone on the night of the shooting."

The defendant first argues that the court's determination that Perrone had probable cause to seize the cell phone on April 15, 2015, at the police station was flawed because it was based on information that Perrone obtained after that seizure. Specifically, he contends that, "[a]t the time of the seizure of the cell phone, the police did not have information that the defendant may have used a Facebook account to communicate with [Sumler or Vanderberg] at the time of the crime."

This argument is unavailing because, even if it is accurate, the court's determination regarding probable cause did not rely exclusively on the use of Facebook by the defendant, Sumler and Vanderberg. At the time of the seizure of the defendant's cell phone, Perrone had information that the defendant and Sumler had been involved in the April 6, 2015 robbery and shooting, and that one of those individuals had communicated with Vanderberg via cell phone. Additionally, on the basis of his training and experience, Perrone knew that criminal actors often communicate with one another via cell phone, and that these devices may contain evidence that can connect a person to a crime, such as call logs, text messages and GPS data. In the present case, the court correctly found that Perrone had sufficient information to establish probable cause, beyond mere suspicion, at the time of the seizure, that the defendant's cell phone contained evidence that could link him to the April 6, 2015 robbery and shooting at the convenience store.

The defendant also argues that the police should not have relied on Vanderberg's self-serving statements to establish probable cause to seize the cell phone. He contends that Vanderberg was not an established informant, he was operating under a cooperation agreement with the state and had provided contradictory informa-

tion regarding his involvement in another criminal incident. As a result of these factors, the defendant asserts, the police should not have considered Vanderberg to be a trustworthy source, nor should they have relied on his statements to establish probable cause to seize the defendant's cell phone. We disagree.

Vanderberg provided a recorded statement to the New Haven police on April 14, 2015. Our Supreme Court has recognized that facts the police obtain from an informer can be significant in a credibility determination. "In such circumstances, the police can observe the informant's demeanor to determine his . . . credibility, and the informant runs the greater risk that he may be held accountable if his information proves false. . . . Indeed, as this court has repeatedly recognized, [t]he fact that an informant's identity is known . . . is significant because the informant could expect adverse consequences if the information that he provided was erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Flores*, 319 Conn. 218, 227–28, 125 A.3d 157 (2015), cert. denied, U.S. , 136 S. Ct. 1529, 194 L. Ed. 2d 615 (2016); see also *State* v. *Mann*, supra, 271 Conn. 326–27.

Vanderberg also made statements against his penal interest, which, as our Supreme Court has noted, "carry their own indicia of credibility—*sufficient at least to support a finding of probable cause* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Flores*, supra, 319 Conn. 229. We conclude, therefore, that the defendant's argument concerning the credibility of Vanderberg is without merit, and, thus, the trial court properly denied the defendant's motion to suppress the seizure of his cell phone and the evidence obtained as a result of that seizure.

### III

Finally, the defendant claims that Perrone's affidavit in support of the warrant application to search the contents of the cell phone contained materially false information. Specifically, he argues that Perrone's affidavit concealed the *Miranda* violation that had occurred at the police station on April 15, 2015. The defendant contends that, had the court been aware of this violation, it would not have authorized the search warrant for the contents of his phone. We disagree. The trial court, in conducting the *Franks* hearing, found that the defendant did not establish the requisite proof in his preliminary showing to require further inquiry.

As previously noted, the police seized the defendant's cell phone after his interview on April 15, 2015. The next day, they applied for a search warrant for the contents of the phone. The following was part of the affidavit attached to that application: "On April 15, 2015, [the defendant] came to [p]olice [h]eadquarters with his mother. Prior to any questioning, [the defendant]

was given his *Miranda* [r]ights from a New Haven Police Department *Miranda* [w]aiver form. [*The defendant*] *requested an attorney and no questioning took place.* Prior to [the defendant] leaving, his mother handed to detectives a cellular telephone she said belonged to [the defendant] and provided . . . the phone number. The phone was seized and placed in an electronic protective bag to prevent remote erasure of data." (Emphasis added.) The application was signed by a judge of the Superior Court on April 16, 2015.

In his January 18, 2018 motion to suppress, the defendant claimed that the affidavit supporting the April 16, 2015 search warrant application contained factual assertions that were known to be false or were made with reckless disregard for the truth, and, therefore, he was entitled to a hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154. At the January 24, 2018 hearing on the defendant's motions to suppress, the court stated: "To be entitled to a hearing, the defendant must have a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit and that the alleged false statement is necessary to a finding of probable cause. The defendant has not met his burden here, and I will again supplement that with more findings and more case law to support the court's finding[s] and denial of the motion down the road."

In the court's April 23, 2018 supplemental memorandum of decision, the court noted that a presumption of validity exists with respect to an affidavit that is submitted in support of an application for a search warrant.[25] The court then focused its analysis on the interaction between Perrone and the defendant's mother, and concluded that she had provided him with the defendant's cell phone in a consensual interaction. The court ultimately found that Perrone had not made "a false statement knowingly and intentionally or with reckless disregard for the truth when he indicated to the magistrate that [the defendant's mother] handed him the cell phone."

"In *Franks*, the United States Supreme Court held that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the defendant's request. . . . As our Supreme Court has explained, before a defendant is entitled to a *Franks* hearing, the defendant must (1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2)

show that the allegedly false statement is necessary to a finding of probable cause." (Citation omitted; internal quotation marks omitted.) *State* v. *Crespo*, 190 Conn. App. 639, 651, 211 A.3d 1027 (2019); see also *State* v. *Ferguson*, 260 Conn. 339, 363–64, 796 A.2d 118 (2002). Stated differently, "before a defendant is entitled to a *Franks* hearing for an alleged omission, he must make a substantial preliminary showing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause." *State* v. *Bergin*, 214 Conn. 657, 666–67, 574 A.2d 164 (1990).

The court did not specifically address the question of whether the omission in the affidavit that questioning had taken place after the defendant requested an attorney met the first prong of the *Franks* test. The issue of whether a statement in an affidavit supporting an application for a search warrant was knowingly and falsely made, or whether it was made with a reckless disregard for the truth, is a question of fact subject to the clearly erroneous standard of review. See, e.g., *State* v. *Stepney*, 191 Conn. 233, 239, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); see also *State* v. *Mordowanec*, 259 Conn. 94, 107, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002); *State* v. *Gjini*, 162 Conn. App. 117, 132, 130 A.3d 286 (2015), cert. denied, 320 Conn. 931, 134 A.3d 621 (2016). In the absence of such a finding, the record is inadequate for our review.

"The duty to provide this court with a record adequate for review rests with the appellant. . . . Without the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *State* v. *Cotto*, 111 Conn. App. 818, 821, 960 A.2d 1113 (2008); see *State* v. *Pecor*, 179 Conn. App. 864, 876, 181 A.3d 584 (2018) (it is not function of Appellate Court to speculate or presume error from silent record).

Additionally, the defendant's brief failed to address the question of whether the purported false or misleading statement was material to the determination of probable cause. We have recognized that, "there can be no *Franks* violation when the omissions, if included in the . . . warrant affidavit, would not defeat probable cause." (Internal quotation marks omitted.) *State* v. *St. Louis*, 128 Conn. App. 703, 711, 18 A.3d 648, cert. denied, 302 Conn. 945, 30 A.3d 1 (2011); see also *State* v. *Altayeb*, 126 Conn. App. 383, 398, 11 A.3d 1122, cert. denied, 300 Conn. 927, 15 A.3d 628 (2011).

In his brief, the defendant simply asserts that the court would not have issued the search warrant if the police had included in their affidavit the fact that he had requested an attorney before he provided them

with information as to the phone's location. For the reasons set forth in part I of this opinion, this is not correct. Furthermore, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016); see also *State* v. *Errol J.*, 199 Conn. App. 800, 807, 237 A.3d 747, cert. denied, 335 Conn. 962, 239 A.3d 1213 (2020). For these reasons, we decline to review the defendant's final claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Miranda* v. *United States*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] See generally *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[3] See *State* v. *Sumler*, 199 Conn. App. 187, 190–93, 235 A.3d 576 (2020).

[4] Frank Evangelista, an associate state medical examiner, testified that he had performed an autopsy on the victim and determined the cause of death to be gunshot wounds of the torso and extremities.

[5] Shortly after the shooting, Elsa Berrios, a New Haven police officer, parked her police cruiser near the crime scene and searched for suspects or evidence. She observed a trail of cigars on the ground that were similar to those taken by the defendant from the convenience store.

[6] The defendant filed a motion for articulation, which the trial court denied on February 4, 2020. The defendant then filed a motion for review with this court. We granted the motion but denied the relief requested.

[7] In *Riley* v. *California*, 573 U.S. 373, 385, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), the United States Supreme Court considered "how the search incident to arrest doctrine applies to modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." It also noted that "[t]he term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, [R]olodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps or newspapers." Id., 393. Ultimately, the court held that "officers must generally secure a warrant before conducting . . . a search [of the information on a cell phone]." Id., 386.

[8] The detectives sent the defendant's cell phone to the Federal Bureau of Investigation (FBI) for the purpose of retrieving the data contained within the phone. Initially, the FBI was unable to defeat the phone's passcode protection. Thereafter, the phone remained in the custody of the New Haven Police Department. On October 12, 2017, the police filed a second application for a search and seizure warrant to retrieve the data from the phone. The court issued the warrant, and the FBI, at this time, successfully accessed the data.

On May 29, 2015, the court issued a warrant, and the police successfully obtained the account information for the defendant's cell phone, including the account history and global positioning system information.

[9] "Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. *Wong Sun* v. *United States*, [371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)]. All evidence is not, however, a fruit of the poisonous tree simply because it would not have been discovered but for the illegal action of law enforcement officials." (Internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997); see also *State* v. *Romero*, 199 Conn. App. 39, 50, 235 A.3d 644, cert. denied, 335 Conn. 955, 238 A.3d 731 (2020).

[10] In the application for the search warrant, the police sought to seize the following items from the defendant's residence: a black face mask, dark

colored gloves, a black baseball hat with an insignia on the front and white colored sneakers. Any items seized would be submitted to the state forensics laboratory for testing.

[11] At the outset of the interview, the two detectives introduced themselves to the defendant. The defendant then complied with Perrone's request that he read out loud the *Miranda* rights. The defendant acknowledged that he understood his *Miranda* rights and the fact that he was not under arrest. Perrone then asked the defendant to initial the *Miranda* waiver form. At this point, the defendant stated: "I really would like a lawyer. Cause I don't, I can't just speak. I don't know. It's crazy. I don't. They never raided my mother'[s] house before or something . . . . I don't know what's going on. I need a lawyer." The defendant then reaffirmed to Perrone the request for a lawyer.

[12] In *Miranda* v. *Arizona*, supra, 384 U.S. 436, "the United States Supreme Court held that the fifth and fourteenth amendments' prohibition against compelled self-incrimination requires that a suspect in police custody be informed specifically of his or her right to remain silent and to have an attorney present before being questioned. . . . The court further held that [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease . . . and [i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." (Citations omitted; internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 289–90, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); see also *State* v. *McMillion*, 128 Conn. App. 836, 839–40, 17 A.3d 1165 (*Miranda* recognized that right to have counsel present at interrogation is indispensable to protection of fifth amendment privilege), cert. denied, 302 Conn. 903, 23 A.3d 1243 (2011).

Our Supreme Court has noted that "*Miranda* warnings are required when a suspect is in police custody and subject to interrogation. . . . [T]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Citations omitted; internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 585, 916 A.2d 767 (2007).

[13] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall be compelled to give evidence against himself . . . ."

[14] In *State* v. *Purcell*, supra, 331 Conn. 318, our Supreme Court held that "our state constitution requires that, if a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel. . . . Interrogators confronted with such a situation alternatively may inform the defendant that they understand his statement(s) to mean that he does not wish to speak with them without counsel present and that they will terminate the interrogation." (Citation omitted; internal quotation marks omitted.) Id., 362.

[15] See generally *New York* v. *Quarles*, 467 U.S. 649, 653, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984); *State* v. *Betances*, 265 Conn. 493, 503–505, 828 A.2d 1248 (2003).

[16] Pursuant to Practice Book § 67-10, the defendant notified this court on September 14, 2020, of his intention to rely on a decision of the District of Columbia Court of Appeals, *Green* v. *United States*, 231 A.3d 398 (D.C. 2020). The defendant's reliance on *Green* is not persuasive, as the suppression motion in that case was directed at a fourth amendment violation and not a fifth amendment violation, as in the present appeal.

[17] It is axiomatic that we may affirm the proper result of the trial court on a different basis. See, e.g., *State* v. *Marro*, 68 Conn. App. 849, 859, 795 A.2d 555 (2002); see also *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 63 n.6, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011); *Coleman* v. *Commissioner of Correction*, 111 Conn. App. 138, 140 n.1, 958 A.2d 790 (2008), cert. denied, 290 Conn. 905, 962 A.2d 793 (2009).

Furthermore, as a result of our conclusion regarding the appropriate remedy for a *Miranda* violation as it relates to physical evidence, we reject the defendant's reliance on our Supreme Court's decision in *State* v. *Purcell*, supra, 331 Conn. 318. In that case, the court held that our state constitution provides greater safeguards for the *Miranda* right to counsel than the federal constitution. Id., 362. Specifically, "our state constitution requires that, if a

suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." (Internal quotation marks omitted.) Id. The court in *Purcell* did not, however, address whether the remedy for such a violation includes suppression of physical evidence. Stated differently, whether the violation occurred under the federal or the state constitution, or both, the defendant does not gain the remedy sought in this appeal, namely, suppression of the cell phone and its contents.

[18] In a single sentence in his brief, the defendant asserts that our state constitution affords greater protection to citizens in the determination of probable cause than does the federal constitution. In the absence of a *Geisler* analysis or any additional argument in his brief, we conclude that the defendant has abandoned any claim to greater protection under our state constitution with respect to this claim. See, e.g., *State* v. *Rivera*, 335 Conn. 720, 725 n.2, 240 A.3d 1039 (2020); *State* v. *Marcus H.*, 190 Conn. App. 332, 335 n.2, 210 A.3d 607, cert. denied, 332 Conn. 910, 211 A.3d 71, cert. denied, U.S. , 140 S. Ct. 540, 205 L. Ed. 2d 343 (2019). Thus, we evaluate the claim only under the federal constitution.

[19] As a result of our conclusion, we need not address the other ground on which the state relies in support of the denial of the defendant's motion to suppress, namely, the inevitable discovery doctrine.

[20] "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." (Internal quotation marks omitted.) *State* v. *Jones*, 320 Conn. 22, 64, 128 A.3d 431 (2015); *State* v. *Jackson*, 304 Conn. 383, 394, 40 A.3d 290 (2012).

[21] "To discourage unreasonable searches and seizures, the evidence obtained as a direct result of that illegal search or seizure, as well as the fruits, or evidence derived therefrom, are excluded from evidence unless the connection between the fruits and the illegal search has been sufficiently attenuated to be purged of its primary taint." (Internal quotation marks omitted.) *State* v. *Ryder*, 301 Conn. 810, 821, 23 A.3d 694 (2011).

[22] "The fourth amendment to the United States constitution, made applicable to the states through the [due process clause of the] fourteenth amendment, prohibits unreasonable searches and seizures by government agents." (Internal quotation marks omitted.) *State* v. *Jones*, 320 Conn. 22, 64, 128 A.3d 431 (2015); see *State* v. *Thomas*, 98 Conn. App. 542, 551, 909 A.2d 969 (2006) (same), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007).

[23] See *State* v. *Boyd*, 295 Conn. 707, 717, 992 A.2d 1071 (2010) (defendant had reasonable expectation of privacy in contents of cell phone), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011).

[24] Specifically, the following colloquy occurred between defense counsel and Perrone:

"Q. . . . So, what probable cause did you have to think that [the defendant's] phone is the one that he was communicating with?

"A. I didn't. It could have been either of the two guys.

"Q. It could have been either.

"A. Um-hm.

"Q. So, you had no probable cause that that search—that phone that you seized from [the defendant] was the one that Mr. Vanderberg was talking about; right?

"A. I don't know.

"Q. Pardon me.

"A. I don't know.

"Q. You don't know?

"A. It could have been either of the two he was contacted with on the phones.

"Q. Right. But you don't know, right?

"A. I don't know which one he contacted."

[25] See, e.g., *State* v. *Bergin*, 214 Conn. 657, 666, 574 A.2d 164 (1990); *State* v. *Dolphin*, 195 Conn. 444, 457, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).